# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2381

_____

| | |
|---|---|
| Gary A. Davolt, | * |
| | * |
| Appellee, | * Appeal from the United States |
| | * District Court for the |
| v. | * Western District of Missouri. |
| | * |
| The Executive Committee of O'Reilly | * |
| Automotive, as Trustee and Plan | * |
| Administrator of the O'Reilly | * |
| Automotive Employee Health Plan, | * |
| | * |
| Appellant. | * |

_____

Submitted: February 18, 2000
Filed: March 15, 2000

_____

Before RICHARD S. ARNOLD, LOKEN, and HANSEN, Circuit Judges.

_____

HANSEN, Circuit Judge.

O' Reilly Automotive, Inc., (O'Reilly) appeals the district court's order granting summary judgment to Gary A. Davolt after finding O'Reilly liable for approximately $35,000 in medical expenses under O'Reilly's self-insured employee benefits plan pursuant to ERISA.[1]  We reverse.

_____

[1]The Employee Retirement Income Security Act of 1974 (codified as amended at 29 U.S.C. §§ 1001-1461 (1994 & Supp. III 1997) and in scattered sections of Title 26 U.S.C.).

# I.
# Facts and Background

On March 5, 1992, O'Reilly hired Davolt to work at the counter of its auto parts store in Columbia, Missouri. On his own accord, Davolt left O'Reilly in 1994 to assume a similar position with a NAPA auto parts store, but he returned to work at O'Reilly on April 17, 1995.

O'Reilly offers its employees a health and dental benefits plan (plan). Employees become eligible for plan benefits after 90 days of continuous employment. The plan, however, excludes coverage for preexisting conditions "that exceed a maximum plan payment of $1000 per calendar year that were diagnosed or treated in the six-month period before [the employee was] covered under [the] Plan." (Appellant's App. at 83-84.)

Davolt suffers from diabetes. Davolt's physician, Dr. Alan L. Braun, diagnosed Davolt's diabetic condition in 1990. About one year later, Dr. Braun preliminarily diagnosed Davolt as suffering from peripheral vascular disease. Peripheral vascular disease, a condition often associated with diabetes, is the clotting or hardening of the arteries in a person's arms or legs. Davolt's physician initially treated Davolt's vascular disease with a prescription drug known as Trental. Davolt's treatment with Trental started in 1991, and he was still taking the drug pursuant to his doctor's orders at the time of his re-employment with O'Reilly in April 1995. In late January of 1996, Dr. Jonathan Roberts, a vascular surgeon, recommended that Davolt undergo surgery for his vascular disease. Dr. Roberts performed the recommended surgery on February 5, 1996.

Davolt submitted a claim for reimbursement for the cost of his surgery pursuant to O'Reilly's benefits plan. Davolt sought approximately $35,000. O'Reilly denied Davolt's claim on the grounds that his condition was a preexisting condition expressly

2

excluded by the plan. Davolt filed an action against O'Reilly seeking reimbursement pursuant to ERISA. Both parties submitted motions for summary judgment. See Fed. R. Civ. P. 56(c). The district court found that the diagnosis of Davolt's vascular disease occurred prior to the plan's six-month waiting period and, although Davolt received drug treatment during the waiting period, such treatment was part of an ongoing treatment process that began earlier than the waiting period. Based on that analysis, the district court granted Davolt's summary judgment motion. O'Reilly appeals. On appeal, O'Reilly contends that the district court misinterpreted the language of its benefits plan.

## II.
### Discussion

The district court reviewed O'Reilly's interpretation of its plan under a de novo standard. O'Reilly argues that the district court should have reviewed its interpretation of its plan under a more deferential standard. We review de novo the question of whether the district court applied the correct standard of review for evaluating an administrator's interpretation of an ERISA plan. See Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998).

Federal courts typically review an administrator's interpretation of an ERISA plan under an arbitrary and capricious standard of review if the plan affirmatively grants the plan administrator discretion to decide eligibility questions. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989). If, however, the record reveals evidence of a conflict of interest or that the plan administrator is acting "with an improper motive," we review the plan administrator's discretionary decision de novo. Armstrong v. Aetna Life Ins. Co, 128 F.3d 1263, 1265-66 (8th Cir. 1997). In Aetna, the plan administrator attempted to minimize claim payments by providing "incentives and bonuses to its claim reviewers based on criteria that include a category called 'claims savings'." 128 F.3d at 1265 (citation omitted). Hence, we concluded that due

3

to Aetna's obvious conflict of interest, a much less deferential standard of review was warranted. See id. We did not, however, create a blanket rule mandating de novo review in all cases where the insurer of a health benefits plan is also the plan administrator. Rather, we held that the inquiry is fact specific and limited to instances where the relationship places the ERISA benefits plan administrator in a "perpetual" conflict of interest. See id.

In this case, the district court assumed a conflict of interest existed simply because the plan administrator is also the self-insured provider of the benefits. Such an assumption contravenes the express holding of Aetna. Although the fact that the plan administrator is also the insurer may give rise to a conflict of interest, the district court erred when it assumed an automatic conflict of interest existed.

O'Reilly argues that the district court should have applied an arbitrary and capricious standard of review because no conflict of interest exists in this case. Davolt, conversely, claims that a conflict of interest does exist, and that de novo review is the appropriate standard. We need not resolve this question, however, because any standard of review (even one determined on an intermediate "sliding scale," see Woo, 144 F.3d at 1061-62) will yield the same result.

We agree with O'Reilly's argument that the district court misinterpreted the plain language of the employee benefits plan. Specifically, the district court held that the preexisting condition exclusion applies only to conditions originally diagnosed or originally treated within the six-month waiting period. The district court concluded that because Davolt's diagnosis and initial treatment occurred prior to the six-month waiting period, such diagnosis and treatment were not excluded by the plan. The district court's interpretation is untenable. It simply strains logic to conclude that the preexisting condition clause excludes only those conditions originally diagnosed or originally treated during the six-month waiting period but does not exclude those conditions

4

diagnosed or treated prior to the six-month waiting period, and which continued to exist and to be treated during the waiting period.

Davolt received treatment, in the form of drug therapy, for his condition during the six-month waiting period. The district court acknowledged this fact but it concluded that the treatment was irrelevant because it was identical to treatment received prior to the waiting period. The district court found that although physicians treated Davolt during the six-month waiting period, that treatment was merely a continuation of the same treatment rather than additional treatment. Under the district court's interpretation, the plan excludes only new or additional treatment that occurs during the six-month period. Such an approach runs contrary to the plain language of the plan. The plan provides that a preexisting condition includes one that is diagnosed or treated within the six-month waiting period. The plan does not create an exception for on-going treatment or require that the treatment be an additional form of treatment. Accordingly, we must conclude that Davolt's vascular disease is a preexisting condition as defined by the plan and that O'Reilly properly denied Davolt coverage. Any other interpretation would be at variance with the plan's plain language, and we are not permitted to rewrite the plan simply to suit sympathetic situations.

## III.
### Conclusion

For the reasons stated herein, we reverse the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.