JoNell LAWYER, Plaintiff,

v.

**HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY,** Defendant.

No. 99–5058–CV–SW–1.

United States District Court, W.D. Missouri, Southwestern Division.

April 20, 2000.

Russell C. Still, Harlan, Harlan & Still, Columbia, MO, for plaintiffs.

Richard J. Pautler, Thompson Coburn, St. Louis, MO, for defendants.

## ORDER

DEAN WHIPPLE, District Judge.

This lawsuit arises from a claim for long term disability benefits pursuant to an employee benefit plan and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.* (1996). Wal–Mart sponsors an employee benefit plan that is insured, funded, and administered by Defendant Hartford Life and Accident Insurance Company ("Hartford Life"). The Plan provides long term disability benefits to eligible, qualified participants. In 1996, Plaintiff JoNell Lawyer ("Lawyer") was such a participant. She received long term disability benefits from her long term disability benefits plan during the period from September 3, 1996 to September 30, 1997. In October 1997, however, Hartford Life informed Lawyer that it did not consider her eligible for benefits on account of disability. Hartford Life did not seek repayment of the benefits it had already provided to Lawyer, but it informed her that she would receive no more benefits. Lawyer appealed Hartford Life's benefits decision through the administrative process, and Hartford Life reaffirmed its denial of benefits. Lawyer filed this action seeking to overturn Hartford Life's benefits decision under 29 U.S.C. § 1132(a)(1)(B). The parties have filed cross-motions for summary judgment. For the following reasons, Defendant's motion is GRANTED and Plaintiff's motion is DENIED.

## I. FACTUAL BACKGROUND

Prior to 1996, Lawyer worked for Wal–Mart as a Regional Personnel Assistant. As a full-time Wal–Mart employee, Lawyer was a participant in Wal–Mart's long term disability employee benefits plan ("the Plan"). The Plan pays benefits to participants who become totally disabled. Under the terms of the Plan, a participant becomes eligible for total disability benefits only if the participant is prevented, by accidental bodily injury, sickness, mental illness, substance abuse, or pregnancy, from performing the essential functions of her occupation at Wal–Mart during a specified waiting period and for twelve consecutive months thereafter. After twelve months, the Plan participant is eligible for continued benefits only if she is prevented from performing the essential functions of *any* occupation for which she is qualified by her education, training, or experience. The Plan's terms give Hartford Life "full discretion and authority to determine eligibility for benefits."

Lawyer applied for long term disability benefits on August 12, 1996. At the time she filed her application, Lawyer was 54-years-old. Although she stated on her benefits application form that the highest grade she had completed was eleventh grade, other evidence indicates that Lawyer graduated from high school and completed two years of junior college. Lawyer is five feet, seven inches tall and weighs approximately 212 pounds. She alleges that she had been totally disabled since February 20, 1996. Hartford Life awarded long term disability benefits to Lawyer beginning on September 3, 1996. Lawyer continued to receive disability benefits from the Plan in the amount of $1,022.89—60% of her monthly income—until September 30, 1997.

On July 25, 1997, Hartford Life notified Lawyer that the initial twelve-month period for her disability benefits claim was ending on September 2, 1997 and that it needed additional information to determine if she was eligible to receive continuing benefits under the "any occupation" definition of total disability. At Hartford Life's request, Lawyer's treating physician, Dr. James Baker, D.O. completed a physical capacities evaluation form. In responses to specific questions on that form, Dr. Baker indicated that Lawyer could not work eight hours per day, but did not suggest another number of hours that she

might be able to work. Dr. Baker noted that Lawyer could use her upper extremities for repetitive tasks such as simple grasping, pushing and pulling, and fine manipulation. He did not answer whether she was able to bend, squat, climb, reach above her shoulder, kneel, crawl, or use her feet. Dr. Baker also did not respond to questions concerning the amount Lawyer could lift or carry in an eight hour day. He noted that she was "very heat intolerant," had not reached maximum improvement, and was not cleared to work. Finally, Dr. Baker stated that Lawyer "continues to be very lethargic and has episodes of TIA's ...."[1] Dr. Baker also signed an Attending Physician's Statement of Continued Disability noting that he had diagnosed Lawyer with TIAs and fatigue; he did not, however, respond to any specific questions on that Statement concerning Lawyer's symptoms, his medical findings, the dates and nature of treatment, Lawyer's physical and mental capacity, his prognosis, or her chances of successful rehabilitation.

On September 15, 1997, an Administrative Law Judge ("ALJ") for the Social Security Administration rendered a decision denying Lawyer's claim for disability insurance benefits. The ALJ found that Lawyer had various severe impairments, including: discogenic and degenerative disorders of the spine, asthma, arthritis, and TIAs with residual weakness. Nevertheless, the ALJ concluded that Lawyer's severe impairments were such that she retained the residual functional capacity to perform her past relevant work as a personnel clerk, personnel assistant, marker, or poultry butcher. He held that she was not under a disability as defined by the Social Security Act.

Ten days later, on September 25, 1997, Hartford Life notified Lawyer that it was extending her long term disability benefits for an additional twenty eight days beyond the initial twelve-month period while it completed a medical review of her claim.

Hartford Life reminded Lawyer that she could only receive continuing benefits beyond the twelve-month period if she was prevented by total disability from doing *any occupation* for which she was qualified. Hartford Life expressly stated that its extension of disability benefits beyond the initial twelve-month period "should not be misconstrued in any way as further liability on your claim." With the extension, Lawyer's eligibility for benefits was scheduled to end on September 30, 1997.

On October 23, 1997, Hartford Life had an in-house physician review Lawyer's claim for a "test change evaluation." The in-house doctor's notes read as follows:

Complicated [patient]. Does not fall into category of [Chronic Fatigue Syndrome]. Her medical problems include (1) obesity and gastric stapling; (2) hypolipidemia; (3) pernicious anemia [secondary] to number one; (4) iron deficiency anemia presumably [secondary] to [gastrointestinal bleeding] from colon polyp; (5) sleep study showing "excessive daytime sleepiness"; (6) episodes of numbness of right arm (? TIA's) [with] completely negative neurologic work-up.

Despite this long list of problems, the patient is not necessarily disabled. [Patient's] major complaints are generalized weakness [and] fatigue. (However, [D.O.'s] note of 4/28/97 says she was vacuuming house.). Psych factors might play a part, but there are no psych notes. Suggest: Internal medicine [independent medical evaluation]. Return to me.

On October 24, 1997, Hartford Life asked another in-house physician to review the former doctor's assessment and advise whether an independent medical evaluation was warranted. It is unclear whether Hartford Life ever received additional advice concerning the need for an independent medical evaluation. However, the ultimate result is clear: On October 27, 1997, Hartford Life notified Lawyer

1. Transient Ischemic Attacks.

that she not eligible for long term disability benefits beyond September 2, 1997 because its claims department had determined that she was not prevented by disability from performing a sedentary occupation. Hartford Life indicated that it based its benefits determination on her claim form, the coverage certificate from Wal–Mart, her medical records from Hidden Springs Diagnostic Center, Dr. Baker's Attending Physician's Statement and his Physical Capacities Evaluation Form. It is unclear whether Hartford Life's claims department knew about the Social Security Administration's earlier denial of benefits at the time it made its initial decision. Hartford Life advised Lawyer that she could submit additional medical information for further review or she could appeal the benefits determination based on the existing medical documentation in the record.

Lawyer requested review of Hartford Life's benefits determination and submitted additional information, including the Social Security Administration ALJ's decision from September 15, 1997 and a KEY functional assessment arranged for Lawyer by Dr. Baker. The KEY functional assessment was performed by Crossroads Physical Therapy Center on November 24, 1997. The assessment recommended that Lawyer could tolerate up to eight hours sitting without limitations and with regular breaks, could stand three to four hours in 30 minute durations, and could walk three to four hours, moderate distances, frequently. The assessment indicated that Lawyer could frequently bend, stoop, and kneel, occasionally squat and crouch, seldom climb stairs or maintain balance, and never crawl. It stated that Lawyer had some weight limitations with regard to lifting objects above her shoulders, from a desk to a chair, from a chair to a floor, or for carrying. The assessment also indicated, however, that she could push and pull up to 56 pounds occasionally and 44 pounds frequently. With regard to Lawyer's use of her extremities, the assessment indicated that she could not maintain a firm right-hand grasp or perform fine manipulation with her right hand, that she could seldom maintain a simple right-hand grasp, firm left-hand grasp, or perform fine manipulation with her left hand. The assessment showed that she could occasionally maintain a simple left-hand grasp, and fully flex and rotate her head and neck. Finally, the assessment revealed that Lawyer had frequent use of both feet and could keep her head still. Based on this new information, Hartford Life affirmed its denial of benefits on January 16, 1998, noting that the additional information further supported the determination that Lawyer was not prevented from performing other occupations for which she was qualified. Once again, Hartford Life invited Lawyer to submit additional information for another review or to appeal the determination.

Lawyer called executives at Wal–Mart to complain about Hartford Life's denial of her claim for benefits. She apparently told them that she was seeing an oncologist and has had transfusions. They called Hartford Life and asked them to look further into Lawyer's benefits claim. On January 21, 1998, Hartford Life wrote Dr. Baker requesting any additional medical information that he might have pertaining to Lawyer's benefits claim. Dr. Baker forwarded his treatment records from August 25 through December 11, 1997. Hartford Life also asked one of its in-house physicians, the same doctor who had reviewed Lawyer's claim in October 1997, to reevaluate her additional medical information. The in-house physician completed his assessment on February 10, 1998. The doctor noted Lawyer's many medical problems, but concluded that none of them would prevent her from sedentary work. On February 19, 1998, Hartford Life again reaffirmed its denial of benefits. Hartford Life's letter to Lawyer stated that the "additional records did not provide objective clinical documentation of a condition or combination of conditions severe enough

to cause your inability to perform other work since 9/3/97."

Lawyer retained an attorney and appealed Hartford Life's denial of benefits. Lawyer's attorney attacked the merits of the Social Security Administration ALJ's decision and indicated that she had recently suffered a stroke. On April 17, 1998, he submitted to Hartford Life new, but undated, mental and physical medical source statements for Lawyer that were completed by Dr. Baker. In those medical source statements, Dr. Baker opined that Lawyer could not lift or carry any weight frequently and only five pounds or less on occasion. He opined that she could not stand or walk continuously or even regularly within an eight-hour day. He indicated that she could only sit for fifteen minutes without a break, and with breaks, for less than one hour in an eight-hour day. Dr. Baker also opined that Lawyer was moderately limited in her ability to: remember locations and work-like procedures, understand, remember and carry out detailed instructions, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.

On June 24, 1998, Hartford Life wrote a letter to Dr. Baker asking that he clarify the opinions he gave on his medical source statements. Specifically, Hartford Life observed that Dr. Baker's medical source statements "vary greatly" from her functional capacity evaluation that was completed in November 1997. Hartford Life requested that Dr. Baker explain the differences and provide the basis for his medical opinions. He did not respond. On October 6, 1998, Hartford Life notified Lawyer's attorney that it was denying her appeal and reaffirming its previous decisions denying long term disability benefits past September 2, 1997.

On February 27, 1999, the Social Security Administration awarded Lawyer disability insurance benefits from March 1997. The award notice stated that Lawyer became disabled under the Social Security Administration's rules on September 1, 1996. It is unclear from the record whether the Social Security Administration's award of benefits is a reversal of the ALJ's earlier denial of benefits, or whether it was made on the basis of a new claim and different medical evidence.

## II. SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554–55, 91 L.Ed.2d 265 (1986). In deciding a motion for summary judgment, the Court must view all facts and inferences from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 1356–57, 89 L.Ed.2d 538 (1986). The party moving for summary judgment must establish both the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Matsushita Elec. Indus. Co.,* 475 U.S. at 586–90, 106 S.Ct. 1348.

The summary judgment standard never changes, but parties to a summary judgment motion carry different evidentiary burdens based on where the ultimate burden of proof falls on a particular issue at trial. The party moving for summary judgment always bears the initial burden of production to demonstrate that the requisite summary judgment standard is met. *Celotex Corp.,* 477 U.S. at 323–24, 106 S.Ct. 2548. Where the nonmovant bears the ultimate burden of proof on a particular claim at trial, which is the case in most summary judgment motions, the moving party may satisfy its initial burden of production in one of two ways. The movant may either demonstrate that the nonmovant's evidence is insufficient to establish an essential element of his or her claim or may submit affirmative evidence that actu-

ally negates one of those essential elements. *Id.* Once the moving party has met this burden, the nonmoving party may not rest on the allegations in the pleadings, but by affidavit or other evidence must set forth specific facts showing that a genuine issue of material fact exists. Fed.R.Civ.P. 56(e); *Lower Brule Sioux Tribe v. State of S.D.,* 104 F.3d 1017, 1021 (8th Cir.1997). If the nonmovant carries its burden of production in this regard, then the moving party must proceed with its ultimate burden of persuading the court that summary judgment is appropriate based on the evidence presented.

The burden-shifting process that occurs when a nonmoving party bears the ultimate burden of proof changes when the movant is the party bearing the ultimate burden of proof with regard to a claim, such as when the movant is a plaintiff or the claim is an affirmative defense. A moving party with the ultimate burden of proof must support its motion with credible evidence that would entitle it to a directed verdict if not controverted at trial. *Celotex Corp. v. Catrett,* 477 U.S. at 331, 106 S.Ct. 2548. Moreover, the absence of an adequate response by the nonmovant, even after the moving party has carried its initial burden of production, will not automatically entitle the movant to entry of summary judgment. Rather, the moving party must show that the evidence satisfies the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it. *Id.*

To determine whether disputed facts are material, courts analyze the evidence in the context of the legal issues involved. *Lower Brule Sioux Tribe,* 104 F.3d at 1021. The mere existence of factual disputes between the parties is insufficient to avoid summary judgment. *Id.* Rather, "the disputes must be outcome determinative under prevailing law." *Id.* (citation omitted). To establish that a factual dispute is genuine and sufficient to warrant trial, the party opposing summary judgment "must do more than simply show

that there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348.

## III. DISCUSSION

### A. Standard of Review

 Lawyer has the right under ERISA to judicial review of Hartford Life's benefits determination. *See* 29 U.S.C. § 1132(a)(1)(B). Lawyer argues that the Court must review Hartford Life's determination under a de novo standard of review. Hartford Life contends that its decision is entitled to more deference. In *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court held that when an ERISA plan administrator's denial of benefits is challenged under § 1132(a)(1)(B), courts should review that decision under a de novo standard unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to interpret plan terms. *Id.* at 115, 109 S.Ct. at 956–957. When the benefit plan grants such discretionary authority to the administrator, courts should review the administrator's decisions for an abuse of discretion. *Id.* The Supreme Court recognized, however, that if an ERISA plan administrator is found to be operating under a conflict of interest, the conflict should be "weighed as a 'factor in determining whether there is an abuse of discretion.'" *Id.* at 115, 109 S.Ct. at 957.

 Building upon the Supreme Court's decision in *Firestone,* the United States Court of Appeals for the Eighth Circuit has held that when a benefits plan grants discretionary authority to the administrator, the deferential abuse of discretion standard of review applies "unless the beneficiary comes forward with evidence establishing that the administrator acted under a conflict of interest, dishonestly, with an improper motive, or without using judgment." *Wald v. Southwestern Bell Customcare Med. Plan,* 83 F.3d 1002,

1007 (8th Cir.1996). *See also Davolt v. The Executive Committee of O'Reilly Automotive*, 206 F.3d 806, 809 (8th Cir.2000) (holding that administrator's plan interpretation was proper under any standard of review); *Sahulka v. Lucent Technologies, Inc.*, 206 F.3d 763, 767–768 (8th Cir.2000) (upholding administrator's decision under abuse of discretion standard); *Armstrong v. Aetna Life Ins. Co.*, 128 F.3d 1263, 1265–66 (8th Cir.1997) (applying de novo review to reverse administrator's decision). Where the record reveals such evidence, courts in the Eighth Circuit must review the plan administrator's discretionary decisions with less deference. *See e.g. Woo v. Deluxe Corp.*, 144 F.3d 1157, 1161 (8th Cir.1998). In this respect, the Eighth Circuit has recognized that not every conflict of interest warrants de novo review. *See Barnhart v. UNUM Life Insurance Co. of America*, 179 F.3d 583, 587 (8th Cir.1999). It has adopted a "sliding scale" approach, reducing the degree of deference accorded to a plan administrator's discretionary decisions in proportion to the extent of the conflict of interest and its effect upon the administrator's benefits determination. *Id.; Woo*, 144 F.3d at 1161.

■ In the instant case, the Plan gives Hartford Life "full discretion and authority to determine eligibility for benefits." Accordingly, the Court will review Hartford Life's benefits determination for an abuse of discretion unless Lawyer produces evidence warranting a less deferential standard of review. To obtain a less deferential review, Lawyer "must present material probative evidence demonstrating that (1) a palpable conflict of interest or a serious procedural irregularity existed, which (2) caused a serious breach of the plan administrator's duty to her." *Woo*, 144 F.3d at 1160 (citation omitted).

■ As to the first prong, Lawyer points out that Hartford Life wears two conflicting hats: it is both the benefits payor and the claims fiduciary.[2] The

Eighth Circuit has consistently held that a conflict of interest does not automatically exist simply because the plan administrator is also the insurer. *See Davolt v. The Executive Committee of O'Reilly Automotive*, 206 F.3d 806, 809 (8th Cir.2000); *Woo*, 144 F.3d at 1161 n. 2. Rather, the conflict of interest inquiry is fact specific and limited to instances where the administrator's dual role as insurer places it in a "perpetual" conflict of interest. *Davolt* at 809. In *Armstrong v. Aetna Life Ins. Co.*, 128 F.3d 1263 (8th Cir.1997), for example, the court found that a conflict of interest existed that warranted de novo review because the administrator/insurer provided incentives to its claims reviewers based on criteria that included a "claims savings" category. *Id.* at 1265. The court in *Woo* found that a conflict existed because the plan administrator in that case, Hartford Life, was also the benefits payor for qualifying disabilities over two years old. 144 F.3d at 1161. In *Barnhart*, the court assumed that a conflict of interest existed after the parties agreed to the financial conflict. 179 F.3d at 588. By contrast, in *Farley v. Arkansas Blue Cross and Blue Shield*, 147 F.3d 774 (8th Cir.1998), the court found no conflict of interest after noting that the administrator/insurer was a not-for-profit organization, and therefore, not conflicted by profit motives. *Id.* at 777 & n. 5.

In this case, Hartford Life argues that while its dual roles may not provide for total neutrality, its financial interest (as benefits payor) in Lawyer's benefits claim was minimal. At most, Hartford Life would have been liable for a total of $65,000 in benefits to Lawyer over a ten-year period. Considering the fact that Hartford Life's long-term business goals would not be well-served by routine denial of valid claims for benefits, the minimal financial impact that Lawyer's claim would have militates against a conflict of interest

---

2. Lawyer has not argued that a "serious procedural irregularity exists." *Woo*, 144 F.3d at

1160. Consequently, the Court will not inquire into this element of the first prong.

finding in this case. *See e.g. Farley*, 147 F.3d at 777; *Mers v. Marriott Intern. Group Accidental Death and Dismemberment Plan*, 144 F.3d 1014 (7th Cir.1998); *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1344 (7th Cir.1995) (finding no conflict of interest when a corporate officer that is administrating a large unfunded company sponsored benefits plan is confronted with a relatively small claim for benefits); *Kotrosits v. GATX Corp. Non–Contributory Pension Plan for Salaried Employees*, 970 F.2d 1165, 1173 (3rd Cir. 1992) (holding that a fiduciary's desire to maintain actuarial soundness of the plan does not constitute a conflict of interest).

Regardless of whether Hartford Life's dual roles as administrator/insurer create a "palpable" or "perpetual" conflict of interest, Lawyer has failed to produce evidence that Hartford Life's conflict caused a "serious breach of [its] fiduciary duty to her." *Woo*, 144 F.3d at 1160. Lawyer contends that Hartford Life committed a serious breach of its fiduciary duty to her when it failed to obtain an independent medical evaluation and relied instead only upon its in-house physician to review her claim. In *Woo*, Hartford Life's failure to obtain an independent medical review of the plaintiff's benefits claim was found to be a "serious procedural irregularity" and a "serious breach" of the fiduciary duties to use proper judgment and thoroughly investigate a claim. 144 F.3d at 1161. The *Woo* court noted some extenuating circumstances that clearly necessitated an independent medical review: the plaintiff was afflicted with an uncommon disease that, although it had not been properly diagnosed at the time she was eligible for benefits, was subsequently diagnosed by two treating physicians. Under such circumstances, the *Woo* court held that Hartford Life had a duty to obtain an independent medical evaluation and investigate the treating physicians' diagnoses rather than simply rely on its in-house review of her earlier physicians' treatment notes.

This case does not present the same type of extenuating circumstances that existed in *Woo*. With regard to Lawyer's claim for benefits, Hartford Life committed a serious procedural irregularity when it failed to seek an independent medical evaluation after its in-house physician suggested that one be obtained. If the Court's analysis were to stop at this point, it might be inclined to apply a less deferential standard of review to Hartford Life's benefits determination. Hartford Life, however, gave Lawyer a meaningful opportunity to present additional information for another review. In response, Lawyer submitted the Social Security Administration ALJ's decision and a KEY functional assessment that was arranged by her own doctor. The ALJ concluded that Lawyer retained the residual functional capacity to perform sedentary work. The KEY functional assessment, which was essentially an independent evaluation, concluded that Lawyer had very few limitations on her functional capacity. Based on the new information submitted by Lawyer, Hartford Life again denied review. Again, Hartford Life gave Lawyer the opportunity to submit additional evidence. When Lawyer appealed Hartford Life's second decision, she submitted Dr. Baker's medical source statements. These statements, which offered no medical basis for the evaluations made, were markedly different from the KEY functional assessment that Dr. Baker had previously arranged for Lawyer. Hartford Life requested that Dr. Baker explain the differences, but he did not respond. Hartford again asked its in-house physician to review Lawyer's medical records. He did not suggest an independent medical evaluation on the second round; this time, he stated his medical opinion that Lawyer was not prevented from performing sedentary work. Hartford Life denied Lawyer's appeal.

The Court finds that Hartford Life did not breach its fiduciary duty when it chose not to obtain an independent medi-

cal evaluation in this case. Unlike in *Woo*, the medical diagnoses of Lawyer's health problems had not changed and were consistent from the beginning. Moreover, Hartford Life had the benefit of an "independent medical evaluation" when it reviewed the KEY functional assessment arranged by Lawyer's own doctor. Hartford Life presented Lawyer with several meaningful opportunities to present additional evidence and even attempted to obtain clarifications from Dr. Baker. It is certainly true that "[t]he lack of a thorough investigation by a fiduciary can result in a serious procedural irregularity requiring a less deferential standard of review." *See Sahulka v. Lucent Technologies, Inc.*, 206 F.3d 763, 769 (8th Cir.2000)(citing *Woo*, 144 F.3d at 1161 and *Wald v. Southwestern Bell Customcare Med. Plan*, 83 F.3d 1002, 1007 (8th Cir.1996)). However, "[w]hen a plan places the burden on the claimant to provide necessary information, the claimant cannot shift the burden of investigation to the plan administrator." *Sahulka* at 769 (citing *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 46 (3rd Cir.1993)). In addition, Hartford Life's subsequent consideration of the Social Security Administration ALJ's denial of benefits in September 1997 cannot be deemed improper in light of the fact that Lawyer herself submitted that decision to Hartford Life. Finally, there is some evidence to suggest that Lawyer was not entirely truthful during this administrative process. She complained to Wal–Mart executives in an attempt to change Hartford Life's benefits determination and told them that she was seeing an oncologist and was receiving transfusions. Yet there is no evidence in the record to support these claims. Lawyer's attorney stated that she had a stroke in the Spring of 1998, but never submitted any supporting documentation. Given the inconsistencies in the medical evidence that Lawyer submitted and in her own allegations, Hartford Life's attempts to obtain additional information from Dr. Baker were adequate. It did not seriously breach its fiduciary duty to Lawyer, and its benefits determination must be reviewed for a simple abuse of discretion.

**B. Evidentiary Support for Hartford Life's Benefits Decision**

Under the abuse of discretion standard, "the plan administrator's decision to deny benefits will stand if a reasonable person could have reached a similar decision." *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1162 (8th Cir.1998). In evaluating reasonableness, the court determines "whether the decision is supported by substantial evidence, which is more than a scintilla but less than a preponderance." *Id.* Based on the Court's review of the record, Hartford Life's final denial of benefits was not an abuse of discretion at the time that it was made in October 1998.

There is substantial evidence in the record to support the benefits determination, including the KEY functional assessment, Dr. Baker's incomplete Attending Physician Statement and physical capacities evaluation, his undated and unsubstantiated medical source statements, his failure to respond to Hartford Life's requests of clarifying information, Lawyer's non-credible statements of disability, both of Hartford Life's in-house medical reviews, and the Social Security Administration ALJ's denial of benefits decision in September 1997. The Court will not consider the Social Security award notice from February 1999 as evidence of Hartford Life's abuse of discretion because that benefits letter was not before Hartford Life at the time of the benefits determination. *See Barnhart*, 179 F.3d at 590; *Layes v. Mead Corp.*, 132 F.3d 1246, 1251 (8th Cir. 1998). *See also Farley*, 147 F.3d at 776 n. 4 ("We note, however, that conducting limited discovery for the purpose of determining the appropriate standard of review does not run afoul of the general prohibition on admitting evidence outside the administrative record for the purpose of determining benefits.") (citing *Brown v. Seitz Foods, Inc. Disability Benefit Plan*, 140 F.3d 1198, 1200–01 (8th Cir.1998)). Even if the Court were to consider the

1999 Social Security benefits letter, there is no indication as to the Social Security Administration's basis for awarding benefits, why the Social Security Administration found Lawyer disabled since September 1, 1996 instead of February 19, 1996 as she had previously alleged, or whether the benefits award was a reversal or a new determination. Lawyer's failure to provide any details concerning this after-acquired evidence weakens its persuasive effect. Accordingly, the Court finds that Hartford Life's final, October 1998 benefits determination is supported by substantial evidence in the record as a whole.

## IV. CONCLUSION

For all of the foregoing reasons, it is hereby ORDERED that Plaintiff JoNell Lawyer's motion for summary judgment is DENIED and Defendant Hartford Life's motion for summary judgment is GRANTED.