# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 01-2887/3221

_____

| | | |
|---|---|---|
| John A. Jackson, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Metropolitan Life Insurance | * | |
| Company, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 18, 2002

Filed: September 9, 2002

_____

Before BOWMAN, LAY,[1] and JOHN R. GIBSON, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Metropolitan Life Insurance Company (MetLife) appeals the District Court's grant of summary judgment in favor of John A. Jackson on the parties' cross-motions

---

[1]The Honorable Donald P. Lay was originally a member of the panel and participated in oral argument and the panel's post-argument conference. The writing of the opinion was assigned to The Honorable Pasco M. Bowman. Subsequently, because of a possible conflict of interest, Judge Lay, on his own motion, recused. The panel opinion therefore issues as the opinion of a two-judge panel.

for summary judgment. The District Court overturned MetLife's decision to terminate Jackson's long-term disability (LTD) benefit payments and ordered that the benefits be paid, concluding that MetLife's decision was arbitrary and capricious and thus violated ERISA.[2] We reverse the judgment of the District Court.

Jackson was employed with Albemarle Corporation (or its predecessors) from approximately August 1985 until March 1995. Sometime before 1995, Albemarle established its Employee Welfare Benefit Plan (the Plan) pursuant to ERISA, and Jackson was a Plan participant. In its role as an insurer, MetLife provides LTD benefits to eligible Plan participants. MetLife also serves as the Plan's designated fiduciary. The Plan expressly grants fiduciaries such as MetLife "discretionary authority to interpret the terms of the plan and to determine eligibility for and entitlement to Plan benefits." Appellant's Separate App. at 56.

Jackson filed his claim for LTD benefits with MetLife in March 1996. According to the diagnosis of his treating physician, Dr. Franklin Roberts, Jackson was suffering from lumbosacral disc disease. MetLife reviewed Jackson's claim, agreed that he was "disabled" according to the Plan definition covering the first twenty-four months of LTD benefit payments, and began monthly payments effective May 7, 1996.

The Plan has two related definitions for determining whether a participant is "disabled" and thus eligible for LTD benefits. During the first twenty-four months of payments, a participant is considered "disabled" if he is under the regular care and attendance of a physician and if he is "unable to perform each of the material duties of [his] regular job." Id. at 47. There is no dispute that Jackson satisfied this

---

[2]ERISA is the Employee Retirement Income Security Act of 1974, Pub. L. No. 93-406, 88 Stat. 829, which is codified as amended at 29 U.S.C. §§ 1001-1461 (2000) and in scattered sections of 26 U.S.C.

definition or that he received the first twenty-four months of benefit payments to which he was entitled.

The Plan's second definition of "disabled" applies when a Plan participant seeks LTD benefits beyond the first twenty-four months of payments. In order to continue to be eligible after this initial twenty-four month period, a Plan participant must not only be under the regular care and attendance of a physician and be unable to perform the material duties of his regular job, but he "must also be unable to perform each of the material duties of any gainful work or service for which [he is] reasonably qualified." Id. In making this determination, the fiduciary must take into account the participant's "training, education, experience and past earnings." Id.

MetLife first terminated Jackson's benefits in August 1998 when he failed to provide the information MetLife requested for its twenty-four month review. By then, MetLife had informed Jackson in a July 1, 1998, letter that his file did not present evidence of continuing care. MetLife had learned from Dr. Roberts that Jackson had not had an appointment since November 1997. MetLife nevertheless granted Jackson's appeal for a reevaluation and eventually received from Dr. Roberts a Physical Capacities Evaluation (PCE) form dated July 9, 1998. In the PCE, Dr. Roberts wrote that he treated Jackson "sporadically." Id. at 197. Dr. Roberts also indicated that Jackson had significant physical limitations and that he had discussed alternative employment options with Jackson, including the "possibility of [a] non[-]strenuous job allowing non[-]frequent position changes." Id. at 198.

In October 1998, a physical therapy clinic, Flint Physical Therapy & Hand Center, performed a Functional Capacity Evaluation (FCE) on Jackson. Flint's FCE concluded that Jackson's physical abilities permitted him to perform "light work" as defined by the standards of the Dictionary of Occupational Titles. Flint also concluded that Jackson could return to work with modified duty. MetLife notified Jackson in November 1998 that it would uphold its decision to terminate his benefits

because he did not meet the Plan's definition of "disabled" for benefits past twenty-four months and was thus ineligible for continued LTD benefit payments.

Jackson, by counsel, again appealed to MetLife and requested that the fiduciary consider a December 21, 1998, letter that Dr. Roberts wrote after learning that Flint's FCE "indicated some level of work capacity." Id. at 228. Dr. Roberts's letter opines that Jackson's condition has not changed and that his "activity level is basically the same" and states that Dr. Roberts is "not recommending [Jackson's] release or employment at his previous job." Id. Dr. Roberts also writes, however, that Jackson "certainly may return to a job that accom[mo]dates his physical condition." Id. In January 1999, MetLife denied Jackson's second appeal on the ground that he did not meet the Plan's definition of disability for extended benefits.

Jackson filed this suit in the District Court alleging that MetLife's decision was arbitrary and capricious and violated ERISA. He sought reinstatement of his disability payments, back payments and other monetary relief, and attorney fees and costs. On the rationale that deference should be accorded to the opinion of a treating physician on a question of disability, the District Court chose to credit only those portions of the record indicating that, in Dr. Roberts's opinion, Jackson is disabled from any occupation. Further, the court interpreted Dr. Roberts's notation on the July 1998 PCE that he treated Jackson "sporadically" as satisfying the Plan's condition that Jackson be under the regular care and attendance of a physician. In addition to reversing MetLife's decision, the District Court's grant of summary judgment reinstated Jackson's LTD benefit payments and also awarded him back benefits and attorney fees.

The standard under which we review a plan administrator's or fiduciary's decision to grant or deny benefits depends upon whether "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire & Rubber Co. v. Bruch, 489 U.S.

-4-

101, 115 (1989). Where, as here, the benefits plan explicitly grants such discretionary authority to a fiduciary, we review the fiduciary's eligibility determination for an abuse of discretion. Donaho v. FMC Corp., 74 F.3d 894, 898 (8th Cir. 1996). This Court "reviews a district court's application of the abuse of discretion standard *de novo*." Fletcher-Merrit v. NorAm Energy Corp., 250 F.3d 1174, 1179 (8th Cir. 2001).

Under the abuse of discretion standard, "the proper inquiry is whether the plan administrator's decision was reasonable; *i.e.*, supported by substantial evidence." Donaho, 74 F.3d at 899. "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938); accord Delta Family-Care Disability & Survivorship Plan v. Marshall, 258 F.3d 834, 841 (8th Cir. 2001), cert. denied, 122 S. Ct. 1173 (2002). The requirement that the fiduciary's decision be reasonable should be read to mean that a "decision is reasonable if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." Donaho, 74 F.3d at 899.

MetLife's decision is supported by substantial evidence and is reasonable given the evidence the fiduciary had before it. MetLife had the consent of Jackson's treating physician to retain Flint, an independent physical therapy clinic, to review Jackson's physical capacity. Flint's conclusions in its FCE that Jackson was capable of performing in the light work category and that Jackson could return to work with modified duty were based on a thorough review and investigation of his physical abilities and injuries, including an extensive array of tests. This alone constitutes more than a scintilla of evidence that Jackson is not "unable to perform each of the material duties of any gainful service for which [he is] reasonably qualified." Appellant's Separate App. at 47.

To counter Flint's conclusions, Jackson argues that because Dr. Roberts is Jackson's treating physician, we must accord deference to Dr. Roberts's opinions, and Jackson further argues that these opinions support the conclusion that he cannot perform any gainful employment. We have held that a treating physician's opinion is generally entitled to greater deference in an ERISA disability case than the opinion of a reviewing physician. Donaho, 74 F.3d at 901; see also Dodson v. Woodmen of the World Life Ins. Soc., 109 F.3d 436, 439 (8th Cir. 1997). But cf. Bentley v. Shalala, 52 F.3d 784, 785-86 (8th Cir. 1995) ("While the opinions of treating physicians are entitled to special weight, they do not automatically control, since the record must be evaluated as a whole."). Even granting to the opinions of Dr. Roberts all the deference called for by our cases, after reviewing the District Court's judgment de novo, we cannot agree that MetLife abused its discretion.

Jackson correctly points out that, as part of his original claim for LTD benefits in 1996, he submitted a form on which Dr. Roberts checked the boxes indicating that Jackson was totally disabled for his old job and for any other occupation. Dr. Roberts also checked the box on the July 1998 PCE form indicating that Jackson was not capable of performing gainful employment. Nevertheless, portions of Dr. Roberts's opinions contribute to the substantial evidence in the record that Jackson does not meet the Plan's definition of "disabled" for extended benefits. After learning that Flint's FCE had concluded that Jackson could perform in the light work category, Dr. Roberts not only did not object that Jackson was disabled from any occupation, he asserted that Jackson "certainly may return to a job that accom[mo]dates his physical condition." Appellant's Separate App. at 228. Dr. Roberts stated only that he would not recommend Jackson's "employment at his previous job." Id. (emphasis added). Moreover, Dr. Roberts discussed the possibility of other employment with Jackson in July 1998 and wrote on his PCE that the details of this discussion included the possibility of Jackson assuming a non-strenuous job that required no lifting and allowed frequent position changes. Thus, the evidence is not overwhelming or uncontradicted that in Dr. Roberts's opinion Jackson is incapable of performing any

occupation.  Cf. Heaser v. Toro Co., 247 F.3d 826, 834 (8th Cir. 2001); Barnhart v. UNUM Life Ins. Co. of Am., 179 F.3d 583, 589 (8th Cir. 1999).

In order to be eligible for benefit payments after the first twenty-four months, a Plan participant must satisfy all three conditions of the Plan's definition of "disabled."  We emphasize that the underlying question that MetLife was required to answer was whether Jackson met the Plan's highly-specific definition of "disabled."  Jackson apparently has a painful, activity-altering physical impairment; MetLife did not conclude otherwise, nor do we.  Nevertheless, MetLife's conclusion that Jackson was not unable to perform each of the material duties of any gainful occupation for which he is reasonably qualified is supported by substantial evidence and is thus reasonable.  We therefore need not consider whether MetLife's conclusion that Jackson was no longer under the regular care and attendance of a physician was also reasonable.  We hold that MetLife did not abuse its discretion by terminating Jackson's continued LTD benefit payments.

Moreover, Jackson's suggestion is without merit that MetLife's termination decision is entitled to less deference on review because Flint, the entity MetLife contracted to review Jackson's physical abilities, is not a medical practitioner.  In Woo v. Deluxe Corp., 144 F.3d 1157 (8th Cir. 1998), two facts—the plan administrator's financial conflict of interest and its commission of a serious procedural irregularity—supported our decision to grant less deference to the plan administrator's benefits determination.  See id. at 1161.  Jackson does not argue that MetLife has a conflict of interest.  Cf. Davolt v. Executive Comm. of O'Reilly Auto., 206 F.3d 806, 809 (8th Cir. 2000) (recognizing that no presumption of a conflict of interest arises "simply because the plan administrator is also the self-insured provider of the benefits").  Further, in Woo we concluded that the plan administrator's failure to obtain an independent medical evaluation constituted a serious procedural irregularity because the plan participant was afflicted with an uncommon disease and the only two medical opinions on the disputed medical issue concluded, without

contradiction or equivocation, that she was disabled. The plan administrator based its conclusion to the contrary—that is, that the participant was <u>not</u> disabled—solely on a review of medical records performed by its own, in-house medical consultant. <u>Woo</u> is thus factually distinguishable from this case and does not support Jackson's contention that MetLife had a duty to obtain an independent review by a medical practitioner. <u>Cf., e.g.</u>, <u>Clapp v. Citibank, N.A. Disability Plan (501)</u>, 262 F.3d 820, 828 (8th Cir. 2001) (distinguishing <u>Woo</u> based in part on "evidence from plaintiff's own primary care physician that she [wa]s not disabled").

Similarly unavailing is Jackson's argument that a 1996 determination by the Social Security Administration (SSA) that Jackson is entitled to Social Security disability benefits proves that MetLife's decision was unreasonable. As Jackson concedes, an ERISA plan administrator or fiduciary generally is not bound by a SSA determination that a plan participant is "disabled." <u>See</u> <u>Schatz v. Mut. of Omaha Ins. Co.</u>, 220 F.3d 944, 950 n.9 (8th Cir. 2000); <u>Anderson v. Operative Plasterers' & Cement Masons' Int'l Ass'n Local No. 12 Pension & Welfare Plans</u>, 991 F.2d 356, 358-59 (7th Cir. 1993); <u>Madden v. ITT Long Term Disability Plan for Salaried Employees</u>, 914 F.2d 1279, 1286 (9th Cir. 1990), <u>cert. denied</u>, 498 U.S. 1087 (1991). Here, although the Plan's definition of "disabled" is similar to the definition the SSA applied, the two definitions are not identical. <u>Cf.</u> <u>Coker v. Metro. Life Ins. Co.</u>, 281 F.3d 793, 798 (8th Cir. 2002) (rejecting plan participant's argument that administrator's denial of benefits was unreasonable even though the plan's definition of disability was similar to the definition under the Social Security Act and the SSA had granted the participant disability status). Further, when the SSA made its disability determination in 1996, the record it reviewed did not include Flint's 1998 FCE, Dr. Roberts's 1998 PCE, or Dr. Roberts's 1998 letter indicating that Jackson could return to work at a job that accommodates his physical impairments. It is not certain that the SSA still would have concluded that Jackson was entitled to disability benefits had it reviewed the same record that was before MetLife. We are, moreover, "satisfied that the extent to which [Jackson's] condition impairs h[is] ability to

perform h[is] job—or any job—is something about which reasonable minds could disagree." Schatz, 220 F.3d at 950 n.9.

Finally, because our decision eliminates Jackson's temporary status as the prevailing party, we also reverse the District Court's award of Jackson's attorney fees. See Lawrence v. Westerhaus, 749 F.2d 494, 496 (8th Cir. 1984) (per curiam) ("[A] court may properly deny a claim for attorneys' fees solely on the ground that the plaintiff obtained no relief under the statute.").

For the reasons stated, the judgment of the District Court is reversed and the case is remanded to that court for entry of judgment in favor of MetLife.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.