**Suzy DAVIDSON, Plaintiff,**

v.

**WAL–MART ASSOCIATES HEALTH AND WELFARE PLAN, Defendant.**

**No. 4:03–CV–40080.**

United States District Court, S.D. Iowa, Central Division.

Feb. 20, 2004.

R. Ronald Pogge, Hopkins & Huebner, Des Moines, IA, for plaintiff.

Christopher R. Hedican, Baird Holm McEachen Pedersen Hamann & Strasheim, Omaha, NE, for defendant.

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS–MOTION FOR SUMMARY JUDGMENT

GRITZNER, District Judge.

This matter is before the Court on Defendant's Motion for Summary Judgment and Plaintiff's Cross–Motion for Summary Judgment. Attorneys for Plaintiff are R. Ronald Pogge and Thomas P. Murphy; attorney for Defendant is Christopher R. Hedican. An oral hearing was not requested by either party and the Court finds that a hearing is not necessary. Thus, the matter is fully submitted to the Court for review.

### PROCEDURAL HISTORY

The Plaintiff, Suzy Davidson ("Davidson"), commenced this action against Defendant, Wal–Mart Associates Health and Welfare Plan ("the Plan") on February 13,

2003.[1] Jurisdiction is proper pursuant to 28 U.S.C. § 1331, as this case arises under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq.

The lawsuit arises out of the Plan's denial of benefits for a surgery requested by Davidson. The final denial followed a pre-certification denial which was subsequently appealed by Davidson and reviewed by the Plan. After reviewing the final denial letter issued at the end of the internal review process, Davidson filed this action. On July 31, 2003, the Plan filed a Motion for Summary Judgment ("Defendant's Motion") pursuant to Federal Rule of Civil Procedure 56. Davidson responded on August 21, 2003, by opposing the Plan's motion and by filing a Cross–Motion for Summary Judgment ("Plaintiff's Motion").

### BACKGROUND FACTS

At all times material hereto, Davidson was a resident of Polk County, Iowa. In February of 2000, she was hired by Wal–Mart Stores, Inc., as a stock person. In May of 2000, Davidson was eligible and became a participant in the Wal–Mart Stores, Inc., Associates Health and Welfare Plan.

The Plan is an employee welfare benefits plan as defined by ERISA. The Plan is self funded within the meaning of ERISA. Wal–Mart Stores, Inc., is a contributor to the Plan. The Administrative Committee of the Plan ("the Committee") is the Plan administrator and "named fiduciary" of the Plan as defined by ERISA. For purposes of this lawsuit, the 2002 Summary Plan Description ("SPD") and 2001 Wal–Mart

---

1. Plaintiff's original Complaint was filed on this date. Plaintiff filed an Amended Complaint on March 13, 2003, in which she dismissed Wal–Mart Stores, Inc., and Wal–Mart Benefits Administration from the action. The Amended Complaint named the current Defendant, Wal–Mart Associates Health and Welfare Plan, the proper Defendant in this action.

Stores, Inc., Associates Health and Welfare Plan WRAP Document ("WRAP Document") are the applicable versions of the Plan documents. The SPD and WRAP Document govern the operation of the Plan. The Plan grants the Committee discretionary authority to interpret and apply the terms of the Plan in connection with determining eligibility and entitlement to Plan benefits.[2]

In February of 1980, Davidson had a nodular growth in her breast and was diagnosed with bilateral fibrocystic disease of the breast by her physician, B.T. Woodburn, M.D. Dr. Woodburn noted a concern "for the development of breast cancer." Based on the diagnosis of fibrocystic disease and the stated concern for cancer,[3] Dr. Woodburn performed a bilateral subcutaneous mastectomy on Davidson.

On or about May 9, 1980, Davidson underwent surgical breast reconstruction following her mastectomy to insert silicone implants in her breasts.[4] Sometime following her breast reconstruction, the implants ruptured on two separate occasions. After the last of these occurrences, David-

son was given saline implants. All of these occurrences and surgeries happened prior to Davidson's participation in the Plan.

In October of 2001, Davidson began complaining of a frequent sore throat. Shortly thereafter she was diagnosed with throat cancer and began chemotherapy and radiation treatments. On January 15, 2002, Davidson underwent physical examination by two University of Iowa physicians. Surgery related to her throat cancer was performed on January 18, 2002. No breast implant rupture was revealed in her January 15, 2002, examination.

On February 12, 2002, Davidson alerted her physician, Ronald Bergman, D.O., that the breast implant in her right breast had ruptured. The rupture had occurred approximately two weeks prior. Dr. Bergman determined Davidson would need reconstructive surgery with insertion of tissue expanders. Due to the throat cancer and her current treatment, Davidson's attending physicians did not want anything done regarding the ruptured implant until after she finished her radiation and chemotherapy.

2. The Plan documents provide the following in relevant part:

(a) The Plan Administrator shall have the sole discretion and authority to control and manage the operation and administration of the Plan.

(b) The Plan Administrator shall have complete discretion to interpret the provisions of the Plan, make findings of fact, correct errors, supply omissions, and determine the benefits payable under [the Plan]. All decisions and interpretations made in good faith pursuant to the Plan shall be final, conclusive and binding on all persons, subject only to the claims procedure, and may not be overturned unless found by a court to be arbitrary and capricious.

This specific provision is found in the WRAP Document. The SPD contains similar language.

3. The parties disagree as to the reasons for the mastectomy. The Plan argues the mastec-

tomy was done "on a prophylactic basis" based on the diagnosis of fibrocystic disease. Davidson, on the other hand, contends it was performed out of a concern for breast cancer. The parties' respective arguments will be detailed and discussed more fully in the analysis section. This record does reveal, however, that Davidson did not have breast cancer concurrent with the mastectomy, nor has she ever been diagnosed with breast cancer.

4. The parties also disagree as to the correct terminology for this surgery. The Plan refers to the surgery as "breast augmentation reconstruction," while Davidson opposes the use of the word "augmentation." Davidson refers to the surgery as merely reconstruction and claims use of the word augmentation is only used in passing in the medical records. Any importance to this distinction will be more fully discussed in the analysis section. The Court will refer to the surgery as a reconstruction.

Dr. Bergman indicated Davidson would need the surgery when her treatment for throat cancer was finished. Dr. Bergman let Davidson know that he would send a letter to her insurance carrier to determine whether this procedure would be covered. On March 18, 2002, the Plan received from Dr. Bergman a precertification request along with medical records related to the proposed reconstruction surgery.

By letter dated April 15, 2002, the Plan notified Davidson and Dr. Bergman that it would deny benefits for the proposed breast reconstruction. The reason for denial was that the proposed surgery was for complications from an illness or medical treatment not covered under the Plan.[5] This letter further advised Davidson of her right to appeal. On July 12, 2002, Davidson's counsel sought an extension of time to submit an appeal of the Plan's decision.

On July 23, 2002, Dr. Bergman again examined Davidson. He noted that she had apparently been cured of the throat cancer with radiation and chemotherapy. He found that she would probably need several surgeries to remove the breast implants, replace them, and possibly perform some autologous tissue reconstruction. Dr. Bergman noted this would not be a cosmetic procedure.

On October 15, 2002, Davidson's counsel submitted additional medical records in support of her appeal to the Plan. This letter also pointed out the references to the Women's Health and Cancer Rights Act of 1998 in the Plan documents[6] and reiterated the physician's statement that the requested procedure was medically necessary.

Shortly thereafter, on October 24, 2002, the Plan forwarded Davidson's medical records to Douglas Friesen, M.D., of Mercy Health Center in Arkansas. The Plan sought independent review to determine if the proposed surgery was directly related to cancer. In response, Dr. Friesen stated his conclusion that Davidson's proposed surgery was not related to cancer. Dr. Friesen noted that while there was concern at the time of her mastectomy in 1980 that she might develop breast cancer, Davidson's final diagnosis was bilateral fibrocystic disease of the breast. Dr. Friesen relied on the diagnoses listed in reports related to the mastectomy and the subsequent breast reconstruction. All of the reports listed fibrocystic disease as the diagnosis. In addition, the reports stated that Davidson was admitted for bilateral subcutaneous mastectomy on a prophylactic basis. This indicated to Dr. Friesen that, while there was a concern for cancer, he could infer there was no cancer at that particular time. In conclusion, Dr. Friesen stated,

> At this point, the question you are asking me is whether the subcutaneous mastectomy was directly related to cancer and according to the information that you have provided to me, it was not related to cancer .... [A]ccording to the information that you have given me, the subcutaneous mastectomy was related to severe fibrocystic disease.

This response was sent in a letter dated November 6, 2003.

---

5. The denial letter actually states as follows: Benefits are not available for the removal of mammary implant, immediate insertion breast prosthesis, delayed insertion breast prosthesis ... under an exclusion in the Plan under charges not covered which states "Charges for complications arising from any non-covered illness, injury, device or medical treatment."

6. The Plan argues that it did not reference the Women's Health Act in the first denial letter because it is inapplicable.

According to the Plan, the Committee completed a full and fair review of Davidson's medical records and claims file and affirmed the Plan's previous conclusion that the benefits sought were excluded by the terms of the Plan. Davidson and her attorney were advised of this decision in a letter dated December 16, 2002, and received by them sometime thereafter. The letter stated that, after conducting a thorough review of Davidson's case, and based on the documentation received, the Plan was denying her benefits based on specified provisions referred to in the "Charges Not Covered" section of the SPD.[7]

Approximately sixty-two (62) days after the Plan's final denial letter, dated December 16, 2002, Davidson filed this Complaint. The Complaint was originally filed on February 13, 2003, and was amended to name the proper defendant on March 13, 2003. Since the submission of Dr. Bergman's original precertification request, Davidson has been ready to have the requested reconstructive surgery.

## ANALYSIS

Pending before the Court are motions for summary judgment submitted by each of the parties. Prior to considering these motions, the Court must determine whether it is proper to consider a report by the Plan's reviewing physician that is included as part of the administrative record relating to the denial of Davidson's precertification request and the subsequent internal review of that decision. The Court then in turn analyzes the motions for summary judgment.

### A. Consideration of Reviewing Physician's Report

■ Prior to discussing the parties' respective motions for summary judgment, the Court will determine whether to consider or exclude Defendant's reviewing physician's report.[8] Davidson, in a supplement to her filings relating to the pending motions for summary judgment, asserts that the Court should not consider the report by Dr. Friesen, the reviewing physician used by the Plan, because it was rendered after the Plan's initial determination to deny Plaintiff's request for precertification. Davidson's objection is made pursuant to the recent decision rendered by the Eighth Circuit in *Morgan v. UNUM Life Insurance Company of America. See Morgan,* 346 F.3d at 1173.

7. The provisions relied on by the Plan in the December 16 letter are found on pages 32–33 of the SPD. They follow the caption "Charges Not Covered" and are entitled "Breast Enlargement/Reduction" and "Complications of Non–Covered Services." These provisions read in relevant part:

Benefits shall not be payable for treatment or services for the following, even if it is standard medical treatment:

\* \* \* \* \* \*

**Breast Enlargement/Reduction.** Any expenses or charges resulting from breast enlargement (augmentation) or reduction, whether male or female, unless directly related to treatment of existing cancer.

\* \* \* \* \* \*

**Complications of Non–Covered Services.** Charges for complications arising from any non-covered illness, injury, device or medical treatment.

8. On this issue, Davidson sought leave of the Court to bring to its attention the recent Eighth Circuit decision in *Morgan v. UNUM Life Insurance Company of America,* 346 F.3d 1173 (8th Cir.2003). Defendant has no objection to Plaintiff's alerting the Court to relevant authority. The Plan does, however, argue that Davidson misinterprets the ruling in *Morgan.*

Davidson's physician requested precertification for her proposed surgery on February 12, 2002. The Plan responded to that request in a letter of denial dated April 15, 2002. The Plan denied benefits and cited its plan provision that provides "charges for complications arising from any non-covered illness, injury, device, or medical treatment" would not be covered. Davidson appealed this decision, and her claim then proceeded through the internal review process provided for in the Plan documents.

On or about October 24, 2002, as part of the internal review process, the Plan sought the opinion of Dr. Friesen regarding its prior denial. Dr. Friesen rendered his opinion on November 6, 2002. Davidson argues this is evidence that the Plan did not seek a medical review of Plaintiff's precertification request until several months after it had initially denied that request. She argues that in *Morgan,* the Eighth Circuit held that post-denial physicians' reports obtained during an administrative appeal are extraneous. As Dr. Friesen's report was not sought or received until the administrative appeal was in progress, Davidson argues this report is extraneous and should not be considered.

Davidson further requests that the Court not consider Dr. Friesen's report in deciding the motions for summary judgment and further limit Defendant's record to any information it has shown to have been in its possession at the time of the initial denial letter, dated April 15, 2002. Davidson argues that the Plan itself stated that "the court is to confine itself to the information before the administrator *at the time of the ... decision.*" In addition, she asserts that the Plan failed to fully and fairly develop the record in this case as it has a duty to do. *See Larson v. Minn. Chamber Bus. Services, Inc. Employee*

*Welfare Plan,* 114 F.Supp.2d 867, 869 (D.Minn.2000) ("Particularly where the District Court is limited to a review of the record developed below, the District Court must ensure that the record was fully and fairly developed.").

The Plan contends that Davidson misinterprets the decision in *Morgan.* The Plan argues that *Morgan* did not hold that medical reviews obtained after the initial benefit determination are extraneous and may not be considered in determining whether the fiduciary abused its discretion as Davidson asserts. The Plan finds it significant that *Morgan* concerned a disability benefits claim and not a claim for health benefits, the issue in the present case.

In *Morgan,* as part of his administrative appeal, the plaintiff offered a medical opinion by Dr. Misukanis based on this doctor's examination of him in October 2000. *Morgan,* 346 F.3d at 1177. UNUM determined that Morgan, the plaintiff, was not disabled as of August 22, 2000. *Id.* at 1176. Thus, Dr. Misukanis performed his examination of Morgan after UNUM determined he was not disabled. *Id.* at 1176–77. UNUM argued that Dr. Misukanis' report should be disregarded because the examination occurred after the determination was made that Morgan was not disabled as of August 22, 2000, and offered no opinion that he was disabled on that date or before; rather, the report only found he was disabled as of the date of the examination.[9] The court ultimately concurred with UNUM, determining Dr. Misukanis' opinion should be disregarded. *Morgan,* 346 F.3d at 1178. Accordingly, the court held as follows:

Finally, UNUM urges that we should disregard Dr. Misukanis's November 2000 evaluation of Morgan because it

---

9. *See* UNUM's Brief, available at http://www.ca8.uscourts.gov/index.html.

was conducted after the August 2000 discontinuation of benefits. We agree, which has the consequence of making Dr. Higgins's critique of Dr. Misukanis's evaluation extraneous, and thus not substantial evidence supporting UNUM's decision to discontinue Morgan's benefits.

*Id.*

The Plan argues this indicates that "*Morgan* is nothing more than a determination that evidence in a particular disability benefit case was not relevant, not a categorical ruling that any medical opinion obtained by an ERISA plan as part of an appeal is inadmissible . . . ." Such an interpretation would also be inconsistent with jurisprudence allowing, and actually requiring, plans to gather evidence and medical opinions to consider on an administrative appeal. *See, e.g., Cash v. Wal–Mart Group Health Plan,* 107 F.3d 637, 640 (8th Cir.1997) (involving review of plan decision where the plan obtained multiple medical opinions as part of the administrative appeal).

Likewise, the Plan argues the present circumstances differ from those in *Morgan.* Here, the Plan obtained the medical opinion to evaluate whether Davidson sought benefits that were covered by the Plan based on her medical history. Dr. Friesen reviewed the records and offered a specific relevant opinion.

The Court finds that *Morgan* is inapposite to the present action. The *Morgan* court did not categorically hold that post-denial physicians' reports obtained during an administrative appeal are extraneous. Rather, the court narrowly found the reviewing physician's report was neither relevant nor material as it was conducted following the discontinuation of benefits and failed to opine about the plaintiff's disabled status on the appropriate date. The court subsequently deemed another

medical opinion, a response and critique of the reviewing physician's report, was extraneous upon finding the former report should be disregarded. In short, this Court cannot find that *Morgan* stands for the broader proposition for which Davidson cites its holding.

Long-standing jurisprudence allows for plan administrators to gather evidence and medical opinions for consideration on appeal. *See Cash,* 107 F.3d at 640. To decide otherwise would defeat the purpose and effectiveness of the internal review process required by ERISA. Moreover, the opinions of independent reviewing physicians are particularly important and beneficial to the internal appeals process. The opinion in this case is relevant and deals specifically with a key issue in the decision-making process employed by the Plan in making its benefits determination. In addition, the date of the final decision is actually December 16, 2002, the date the final report was issued following the internal appeals process by the Committee, and not April 15, 2002, the date of the initial denial letter in response to Davidson's pre-certification request. Therefore, the Court will not disregard Dr. Friesen's report but will consider it along with all the other materials that make up the administrative record in this case.

**B. Standard for Summary Judgment**

Rule 56 of the Federal Rules of Civil Procedures provides that summary judgment should be rendered

> if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). To avoid summary judgment, the nonmoving party must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *See Celotex v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party must go beyond the pleadings, and by affidavits, depositions, answers to interrogatories, and admissions on file, designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. While the quantum of proof that must be produced to avoid summary judgment is not precisely measurable, it must be enough evidence for a reasonable jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In considering a motion for summary judgment, the Court must view all the facts in the light most favorable to the non-moving party and give that party the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (citations omitted); *Rifkin v. McDonnell Douglas Corp.,* 78 F.3d 1277, 1280 (8th Cir.1996); *Marts v. Xerox, Inc.,* 77 F.3d 1109, 1112 (8th Cir. 1996). The question before this Court is whether the record, when viewed in a light most favorable to the non-moving party, shows there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See Mansker v. TMG Life Ins. Co.,* 54 F.3d 1322, 1326 (8th Cir.1995) (citing *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548, and *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505). In addition, "[w]here the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Id.* In this case, both parties agree that this case is well suited for summary judgment on the substantive issues.

## C. Defendant's Motion for Summary Judgment

Defendant has brought its motion for summary judgment based on two theories: (1) that the claim brought by Davidson is time barred due to a contractual limitation period in the plan, and (2) that the decision of the Committee is entitled to deferential review, and that under such review, the decision was reasonable and must be upheld. Defendant contends it is entitled to judgment as a matter of law on these theories and that summary judgment is therefore appropriate.

### 1. The Claim Is Time Barred

The Plan argues that Plaintiff's claim is time barred. It bases this argument on language in the SPD, which provides,

before you may bring legal action in a court in connection with an adverse decision under the Plan, you must first complete this review process. No legal action can be brought with respect to a claim under the Associates' Health and Welfare Plan after 45 days from the decision on appeal.

The WRAP Document contains similar language. The Plan contends this language specifies a contractual limitation period for pursuing claims against the Plan. The Plan further argues that Davidson filed her Complaint with this Court outside of the 45–day limitation period provided for in the Plan materials and as a result, is barred as a matter of law.

### a. Contractual Limitation

ERISA does not provide a statute of limitations for suits to recover benefits brought pursuant to § 502(a)(1)(B). Instead, courts normally borrow the most closely analogous state limitations period.

*Duchek v. Blue Cross & Blue Shield of Neb.*, 153 F.3d 648, 649 (8th Cir.1998) (citing *Johnson v. State Mut. Life Assurance Co. of America*, 942 F.2d 1260, 1262–63 (8th Cir.1991)).

■ Contractual limitations periods shorter than the statute of limitations otherwise applicable are enforceable. *United Commercial Travelers v. Wolfe*, 331 U.S. 586, 608, 67 S.Ct. 1355, 91 L.Ed. 1687 (1947) ("it is well established that, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period"). While the Eighth Circuit has not decided the issue, at least two other circuits have held that a contractual limitation is enforceable under ERISA regardless of state law. *See Northlake Reg'l Med. Ctr. v. Waffle House Sys. Employee Benefit Plan*, 160 F.3d 1301, 1303 (11th Cir.1998); *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 875 (7th Cir.1997); cf. *Wilkins v. Hartford Life & Accident Ins. Co.*, 299 F.3d 945, 948 (8th Cir.2002) (finding court "need not consider whether federal common law under ERISA should be applied if such a plan provision is unenforceable under state law" where the contractual limitations period in the plan in question was enforceable under the applicable state law); *Duchek*, 153 F.3d at 650 (concluding that the court need not decide the issue of whether a reasonable contractual limitations period is enforceable under ERISA regardless of state law). In reaching their decision, these courts did, however, indicate that for a contractual limitations period to be enforceable, it would have to be reasonable. *Northlake*, 160 F.3d at 1304; *Doe*, 112 F.3d at 874, 875. "The requirement that the contractual limitation, to be enforceable, be reasonable backs up the market incentives to deal fairly with the plan's beneficiaries." *Doe*, 112 F.3d at 874–75.

Other courts have enforced contractual limitations provisions in ERISA cases if authorized by the law of the forum state. *See, e.g., Wilkins*, 299 F.3d at 947 (finding a contractual limitation in a plan governed by ERISA was enforceable where authorized by state law); *Duchek*, 153 F.3d at 650 (same). This seems to be the state of the law in the Eighth Circuit. *See Duchek*, 153 F.3d at 650 ("Because ERISA has no statute of limitations for actions to recover plan benefits, we borrow the most analogous state statute of limitations."); *Adamson v. Armco, Inc.*, 44 F.3d 650, 652 (8th Cir.1995) (same). The Eighth Circuit has stated that "[a]t least in this circuit it is settled that a claim for ERISA benefits is characterized as a contract action for statute of limitations purposes." *Adamson*, 44 F.3d at 652.

If the Court looks to state law, Iowa is the applicable forum and thus Iowa law governs. In Iowa, the Iowa Supreme Court has consistently held that individuals may enter into "private agreements which vary general statutes of limitations." *Thomas v. United Fire & Cas. Co.*, 426 N.W.2d 396, 397 (Iowa 1988) (finding the law does not prohibit such agreements); *see also MidAmerican Energy Co. v. Great American Ins. Co.*, 171 F.Supp.2d 835, 851 (N.D.Iowa 2001) (recognizing parties may contractually agree to a shorter limitations period). An insurer may clearly indicate an applicable limitations period but must do so in a clear and articulate manner. *Hamm v. Allied Mut. Ins. Co.*, 612 N.W.2d 775, 778, 783–84 (Iowa 2000) (finding insurers have the ability to "clearly articulate the applicable imitations ... and the event upon which the limitations period begins to run" and that "an insurer

has a duty to define any limitations or exclusionary clauses in clear and explicit terms"). If the language in such a contract is ambiguous, it will be construed in the manner most favorable to the party that did not draft the document. *Id.* at 784; *see also Dickson v. Hubbell Realty Co.*, 567 N.W.2d 427, 430 (Iowa 1997).

■ In the Eighth Circuit, a claim for ERISA benefits is considered a contract action for purposes of determining the relevant statute of limitations. *Adamson*, 44 F.3d at 652. In Iowa, the statute of limitations period for written contracts is ten years. *See* Iowa Code § 614.1(5). However, as noted, Iowa law allows parties to a contract to contractually agree to a shorter limitations period, thereby varying the applicable statute of limitations. *See MidAmerican Energy Co.*, 171 F.Supp.2d at 851; *Thomas*, 426 N.W.2d at 397.

In *Thomas v. United Fire and Casualty Co.*, the court upheld a twelve-month limitation period in a fire insurance policy even though the applicable Iowa statute of limitations period was ten years. *Thomas*, 426 N.W.2d at 397–98. Likewise, the court upheld a similar contractual limitation in *Stahl v. Preston Mutual Insurance Association*, again involving a fire insurance policy provision. *Stahl v. Preston Mut. Ins. Ass'n*, 517 N.W.2d 201, 202–03 (Iowa 1994). While applying Iowa law, a

federal district court in Pennsylvania held that an ERISA action was barred by the insurance plan's contractual one-year limitation period. *Innopac Int'l, Inc., Int'l Innopac, Group Health Plan v. John Hancock Mut. Life Ins. Co.*, 1995 WL 71494, \*2 (E.D.Pa.). In reaching its decision, the court acknowledged that this Court had previously enforced the same one-year contractual limitation period in an ERISA action. *Id.* at \*2 (citing *Comstock v. Blue Cross & Blue Shield of Iowa*, No. 4:04–cv–10151 (S.D. Iowa April 29, 1994) (unpublished)).[10]

In Iowa the general statute of limitations period for written contracts (as ERISA plans are considered for limitations purposes) is ten years; but Iowa law does allow for shorter periods through private contractual agreements. As a result, this Court need not determine whether the Eighth Circuit would follow the reasoning of the Seventh and Eleventh Circuits, which have held a contractual limitation in an ERISA plan is enforceable regardless of state law. *See Wilkins*, 299 F.3d at 948; *Duchek*, 153 F.3d at 649. The contractual limitations period here will be enforceable under state law as long as it is reasonable.[11]

**b. Reasonableness**

■ Under Iowa law, a contractual limitations period is enforceable if it is reason-

---

**10.** Courts outside of the Eighth Circuit have also enforced contractual limitations periods specified in plans governed by ERISA where allowed by state law. *See, e.g., Moore v. Berg Enters., Inc.*, 201 F.3d 448, 1999 WL 1063823, \*2 (10th Cir.1999) (finding valid a contractual limitations period in an ERISA plan where the limitation precluded judicial actions to recover benefits that are filed more than three years after a specified date); *McDuffie v. Flowers Hosp., Inc.*, 2001 WL 102396, \*4 (S.D.Ala.) (same-three-year limitations period); *Lugo v. AIG Life Ins. Co.*, 852 F.Supp. 187, 195 (S.D.N.Y.1994) (same-three-year limitations period); *Chilcote v. Blue Cross & Blue Shield United of Wis.*, 841

F.Supp. 877, 879–80 (E.D.Wis.1993) (same-three-year limitations period); *Koonan v. Blue Cross & Blue Shield of Va.*, 802 F.Supp. 1424, 1425 (E.D.Va.1992) (same-one-year limitations period).

**11.** This reasonableness determination of the contractual limitations period would be the same were the Court to apply Iowa law or follow the holdings in *Northlake* and *Doe* discussed above. Thus, both *Northlake* and *Doe* are cited in the following section discussing the reasonableness of the limitations period at issue in this case.

able under the circumstances of the particular case and sufficient to allow a plaintiff to file a claim after the alleged damage has been ascertained. *Douglass v. American Family Mut. Ins. Co.*, 508 N.W.2d 665, 666 (Iowa 1993) (quoting Arthur L. Corbin, 1A *Corbin on Contracts*, § 218, and enforcing two-year contractual limitation in uninsured motorist policy instead of the statutory ten-year period), *rev'd on other grounds, Hamm*, 612 N.W.2d at 784;[12] *see, e.g., Milligan v. Grinnell Mut. Reinsurance Co.*, 2001 WL 427642, *1, 3 (Iowa App. April 27, 2001) (finding two-year limitation from date of loss on bringing suit under a fire insurance policy was reasonable where the insurer gave final rejection of payment 90 days before the contractual deadline, giving plaintiffs approximately three months after rejection to commence suit, and the insurer did nothing to mislead plaintiffs, and there was no claim plaintiffs were unrepresented by counsel when rejection was made). To be reasonable, "the time allowed should be sufficient to allow the plaintiff to investigate and file his case within the limitations period ...." *Douglass*, 508 N.W.2d at 666. The Iowa Supreme Court has held, however, that "certain conduct by an insurer may preclude the insurer from asserting a limitations period as a defense ...." *Stahl*, 517 N.W.2d at 204.

In discussing the reasonableness of a contractual limitation in an ERISA action, the Seventh Circuit stated,

A suit under ERISA, following as it does upon the completion of an ERISA-required internal appeals process, is the equivalent of a suit to set aside an administrative decision, and ordinarily no more than 30 or 60 days is allowed within which to file such a suit.... Like a suit to challenge an administrative decision, a suit under ERISA is a review proceeding, not an evidentiary proceeding. It is like an appeal, which in the federal courts must be filed within 10, 30, or 60 days of the judgment appealed from, ... depending on the nature of the litigation, rather than like an original lawsuit.

*Doe*, 112 F.3d at 875 (internal citations omitted). Similarly, the Eleventh Circuit upheld an ERISA plan's 90–day contractual limitations period, finding it reasonable and enforceable. *Northlake*, 160 F.3d at 1302, 1304.[13] That court noted there was no suggestion the plan's limitation was subterfuge to prevent lawsuits. *Id.* at 1304. The court also noted the plan was funded by employee and employer contributions and did not exist to make a profit, unlike an insurance company. *Id.* Furthermore, the plan contained similar restrictions on its own actions, and the 90–day limit was commensurate with other provisions in the plan designed to timely process claims. *Id.* The court found the time for the internal appeals process, which was approximately ten months, plus the additional 90–day contractual limitation, gave the plaintiff adequate time to file suit. *Id.* The court ultimately dismissed the plaintiff's lawsuit as time barred because it was filed 30 days past the 90–day limit. *Id.* at 1303–04.

 The Plan argues the 45–day contractual limitation as provided in the Plan

---

12. *See Nicodemus v. Milwaukee Mut. Ins. Co.*, 612 N.W.2d 785, 787 n. 1 (Iowa 2000) (holding that *Hamm* did not affect the validity of the legal principles set forth in *Douglass* regarding the enforceability of a policy limitation).

13. The Court also notes the decision in *Delosky v. Penn State Geisinger Health Plan*, No. 4:CV–00–1066 (M.D.Pa.2002) (unpublished opinion), that the Plan attached to its Motion for Summary Judgment. In *Delosky*, the court found the plan's 60–day limitation was reasonable under the circumstances.

materials is reasonable and enforceable. Similar to the circumstances in *Northlake*, the Plan in this case is self funded and contains other limitations designed to timely process claims. The Plan notes that Davidson was represented by counsel throughout most of the internal appeals process and argues her counsel had ample time to investigate her claim. The internal appeals process lasted approximately eight months. The Plan contends that this eight months, plus the additional 45–day contractual limitations period, provided adequate time for Davidson and her counsel to investigate the case and timely file suit.

The Plan issued its final decision on appeal on December 16, 2002. Davidson filed her Complaint on February 13, 2003.[14] The Plan argues that Davidson's failure to file her claim within the 45–day limitations period specified in the Plan documents renders her claim untimely. As such, the Plan contends the present action is time barred and summary judgment dismissing Davidson's claim is warranted.

Davidson asserts at least two reasons why the Plan's argument that her claim is time barred fails. She argues that the limitations period is (1) ambiguous and (2) unreasonable. Both of these arguments boil down to the contention that the contractual limitations period in the Plan is inapplicable to Davidson under the circumstances of this case.

In support of her argument that the Plan language relating to the limitations period is ambiguous, Davidson argues the word "claim", as the Plan invokes it, is ambiguous and unclear. Davidson argues that she may assert a claim of promissory estoppel because the terms of the Plan are ambiguous and the Plan engaged in communication interpreting the ambiguities. *See Barker v. Ceridian Corp.*, 918 F.Supp. 1298, 1305 (D.Minn.1996) (citing *Slice v. Sons of Norway*, 34 F.3d 630, 634 (8th Cir.1994)).

Davidson argues that the Plan has interpreted the word "claim" in different ways. She argues that the Plan denied her access to certain plan information when she requested it based on the Plan's definition of "claim" by stating that she had not asserted a claim but rather sought a precertification or predetermination of benefits. Davidson then argues that the Plan's contractual limitations period is solely applicable to claims, and as the Plan denied her access to certain records based on her lack of an asserted claim, "[i]t would ... be horribly inequitable for Defendant to interpret its self-inflicted ambiguity to its advantage to deny Plaintiff access to documents to which she has a right; and then interpret the same ambiguity differently to deny Plaintiff access to the Courts."

In support of the argument that the contractual limitations period in the Plan is unreasonable, Davidson focuses on her inability to obtain a copy of the file pertaining to her request for precertification until January 16, 2003, over a month after the decision on appeal was rendered. In addition, when Plaintiff's counsel was referred to the Plan's legal department, only Plan documents were produced. In short, Davidson argues she had insufficient time to go through the file associated with her precertification and appeals before the Plan's 45–day limitations period expired.

Furthermore, Davidson argues that Defendant's reliance on cases upholding 60–day and 90–day limitations periods is mis-

---

14. The Court notes that Davidson amended her Complaint on March 13, 2003, to name the proper party at the behest of the Plan. The date of her original filing, not the date of amendment, is the date the Court considers in determining whether Plaintiff's claim was time barred.

placed. In *Northlake*, the court stated that it did "not mean to suggest that a 90–day limitations period will always be reasonable, nor do we mean to suggest a shorter period will ever be reasonable." *Northlake*, 160 F.3d at 1304. Davidson goes even further by arguing that Defendant's actions in refusing to provide information to her counsel and stating her precertification was not a claim is nothing more than subterfuge by Defendant. Under the circumstances of this case, Davidson argues the contractual limitations period is unreasonable and therefore should be held inapplicable.

Plaintiff also seems to suggest that the limitations period should be disregarded by the Court in the context of this case because of Defendant's actions throughout the precertification and appeals process. As previously mentioned, "certain conduct by an insurer may preclude the insurer from asserting a limitations period as a defense ...." *Stahl*, 517 N.W.2d at 204. Davidson points out that her counsel repeatedly attempted to obtain copies or access to her precertification file. In fact, ERISA plans are required to advise plan participants of the ERISA rights available to them in the SPD. *See* 29 C.F.R. § 2520.102–3; 42 F.R. 37182 (1977). Plan participants are entitled to copies of all plan documents and other plan information upon request. *Id.* In 2000, this right was enhanced by requiring ERISA plans state that if a participant's "claim for a (pension, welfare) benefit is denied or ignored, in whole or in part, you have a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules." [15] 65 F.R. 70243. This statement was intended as a "clarifi-

cation to the language discussing the types of documents participants and beneficiaries have the right to examine and receive copies of upon request." 65 F.R. 70226.

The Plan contends that Davidson's insistent arguments relating to the definition of "claim" and the impact of that term upon the time for her to file her lawsuit are irrelevant. The language of the contractual limitations period provided in the SPD involves review procedures for *any* denial of insurance benefits. Specifically, the SPD states that if a participant thinks he has "been improperly denied any insurance benefits" under the Plan, the participant may request review. The Plan asserts this is not limited to post-treatment claims but expressly and unambiguously applies to any denial of benefits, including that of precertification. In addition, Davidson's assertion that the review procedures did not apply to her because her requested precertification was not a "claim" is belied by her use of the review procedures. She also received notice of such review procedures from the Plan in the initial letter denying her precertification request. Moreover, the Plan argues that there is no ambiguity in the contractual limitations time period, and the time period in issue is when Davidson was obligated to file suit after the denial of her appeal.

The Plan also opposes Davidson's assertion that she should be excused from timely filing her Complaint because the limitations period is unreasonable under the circumstances of this case. Davidson's main contention in support of this argument is that she did not receive the administrative record until 31 days after the appeal was decided. The Plan counters this argument by stating that first,

---

**15.** It appears that this language was to be included in the SPD of the Plan beginning in January 2003. In fact, this regulation is irrel-

evant and inapplicable to the current case as it only applies to claims filed before January 1, 2003. 66 F.R. 35886.

the appeals record was not complete until the appeals process ended, and second, she did not need the administrative record to timely file her complaint.

Under ERISA, Davidson was entitled to appeal the denial of her precertification request. ERISA does not require that she file the Complaint with anything more than the fact of the denial. The Plan points out that the Complaint filed by Davidson does not refer to the administrative record nor does it demonstrate she needed the record to file her Complaint. Accordingly, the Plan argues that her assertion that she could timely file without the record is false. The Plan further points out that she received the administrative record 15 days before the limitations period had run. Davidson has made no argument that she was unable to file her Complaint within the required limits before or after she received the administrative record.

Davidson does state that under the reach of Rule 11 of the Federal Rules of Civil Procedure and ERISA provisions carrying the threat of attorney's fees for a losing party, *see* 29 U.S.C. § 1132(g)(1), there was some peril in Plaintiff filing suit within mere days of receiving the information on which Defendant relied in denying the request. She further argues that the initial denial letter did not provide sufficient notice or information for her to adequately pursue an appeal or promptly litigate the matter.

The Court finds the language in the SPD setting the 45–day limitations period for bringing suit for review of the denial of benefits is unambiguous. The plain language expressly states that the internal review process and the limitations period

apply to legal actions "in connection with an *adverse decision* under the Plan." A denial of a precertification request would obviously be considered an adverse decision. While the following sentence refers to legal action with respect to a claim, it is apparent that claim encompasses the adverse decisions referred to in the preceding sentence. Moreover, Davidson took advantage of the review process and had notice of the relevant provisions of the Plan related to the limitations period for filing a claim for judicial review of her benefits determination.

The Court also finds the limitations period is reasonable under the circumstances of this case. The review process took approximately eight months. Davidson then had another 45 days in which to file her lawsuit. In all, Davidson had nearly ten months from the initial denial to prepare to file a complaint. Her counsel was involved in the internal appeals process from the outset. She did, in fact, receive the administrative record prior to the end of the limitations period, but all she really needed to pursue the action in court was the final denial letter, the Plan documents, and the material she presented to the Plan as part of the precertification and appeals process, all of which she possessed with sufficient time to review before filing suit.[16] In addition, the Plan did not commit conduct sufficiently egregious for the Court to hold the limitations period inapplicable on that basis. *See, e.g., Stahl,* 517 N.W.2d at 204–05 (finding mere denial of liability insufficient where no evidence insurer misled claimant regarding rejection of claim and the applicable limitations period or that insurer made representations to lull claimant into delaying the filing of his action).

---

**16.** The Court commends Plaintiff's counsel for taking seriously the threat of Rule 11 sanctions and ERISA's provisions relating to attorney's fees, but fear emanating from these provisions should not prevent counsel from meeting the applicable limitations period when in possession of sufficient information to pursue judicial review under ERISA.

"[I]t would be anomalous for this Court to allow plaintiff to maintain an action to recover a benefit which was created by and exists solely because of the regulations of the Plan, while at the same time to deny effect to the conditions those same regulations place upon receipt of that benefit." *Patterson–Priori v. Unum Life Ins. Co. of America,* 846 F.Supp. 1102, 1105–06 (E.D.N.Y.1994) (quoting *Scheirer v. NMU Pension & Welfare Plan,* 585 F.Supp. 76, 79 (S.D.N.Y.1984)). In finding the contractual limitations period reasonable under the circumstances, the Court finds it is enforceable in the present lawsuit. Consequently, by filing her Complaint after the limitations period ended, Davidson's claim is time barred and fails as a matter of law. Thus, summary judgment in favor of the Plan is required.

While the Court finds the contractual limitations period reasonable and enforceable, the Court finds it both appropriate and expedient to consider the additional argument raised by Defendant in support of its motion for summary judgment. This argument focuses on a deferential review of the Committee decision and argues that the Committee's decision was reasonable under the circumstances.

## 2. Deferential Review of the Administrative Committee Decision

The Plan argues that, even assuming Davidson's claim was timely, the denial of her claim must still be found reasonable, as it was based on substantial evidence and a reasonable interpretation of the Plan. Consequently, the Plan argues it is entitled to summary judgment following a deferential review of the administrative committee decision.

■ ERISA provides plan beneficiaries with a right to judicial review of a benefits determination. 29 U.S.C. § 1132(a); *Heaser v. Toro Co.,* 247 F.3d 826, 833 (8th

Cir.2001). An ERISA plan may authorize a plan sponsor to delegate to the plan administrator discretionary authority to both determine eligibility for plan benefits and to construe plan terms. *McKeehan v. Cigna Life Ins. Co.,* 344 F.3d 789, 793 (8th Cir.2003) (citing 29 U.S.C. § 1105(c)(1) and 29 C.F.R. § 2509.75–8). For such authority to be granted, the plan must contain explicit language granting discretionary authority to the plan administrator. *Id.* However, "[t]he plan need not spell out in intricate detail who has the discretion other than to specify that those charged with implementing it will have such discretion." *Butts v. Continental Cas. Co.,* 357 F.3d 835, ——, 2004 WL 229567, *2 (8th Cir. 2004); *see, e.g., Shipley v. Arkansas Blue Cross & Blue Shield,* 333 F.3d 898, 901 n. 4 (8th Cir.2003) (holding plan language sufficient to invest plan administrator with discretionary authority such that court should apply abuse of discretion standard upon review).

■ If the plan gives "the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," the administrator's decision to deny benefits is reviewed by the Court under an abuse of discretion standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *see also Cash,* 107 F.3d at 641 ("If the plan gives such discretionary authority, the court reviews the plan administrator's decision for abuse of discretion"); *Stock v. SHARE,* 18 F.3d 1419, 1422 (8th Cir.1994) ("If a plan grants such authority, courts review the denial of benefits under an arbitrary-and-capricious standard."). Otherwise, a *de novo* standard is to be employed. *Firestone Tire & Rubber Co.,* 489 U.S. at 115, 109 S.Ct. 948 ("Consistent with established principles of trust law, we hold that a denial of benefits challenged

under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."). In applying this standard, the Court must uphold the plan administrator's benefits determination or plan construction if it is reasonable. *Butts,* 357 F.3d 835, ——, 2004 WL 229567 at *3; *Shipley,* 333 F.3d at 901.

There are, however, exceptions to this rule. *See, e.g., Woo v. Deluxe Corp.,* 144 F.3d 1157, 1160 (8th Cir.1998). There are two primary exceptions to the abuse of discretion standard that Davidson urges are relevant to this lawsuit: (1) when a fiduciary interprets the law, decisions are reviewed *de novo, Meyer v. Duluth Bldg. Trades Welfare Fund,* 299 F.3d 686, 689 (8th Cir.2002) ("where a plan's decision to deny benefits is based on its construction of existing law, the plan's interpretation of a controlling principle of law is reviewed *de novo* "); and (2) where there are procedural irregularities or a conflict of interest, decisions are reviewed under a sliding scale standard of review. *Clapp v. Citibank, N.A. Disability Plan,* 262 F.3d at 826, 827 (8th Cir.2001); *Woo,* 144 F.3d at 1160.

Davidson argues that the Plan interpreted law and therefore *de novo* review of that interpretation is mandated. She contends that Plan language indicates Defendant interprets mastectomy and breast reconstruction claims in accordance with the Women's Health and Cancer Rights Act of 1998, 29 U.S.C. § 1185b ("Women's Health Act"). Furthermore, Davidson contends that the Plan relied on the Women's Health Act in defending its decision in this matter. She also argues that she asked the Plan to consider the language of the Plan that references the Women's Health Act. Thus, Davidson argues that it must be

assumed Defendant interpreted the law in formulating its Plan and in denying Plaintiff's request for precertification. She requests that the Court examine the interpretation of the Women's Health Act as set out in the SPD.

As Plaintiff admits, this is not a case where the plaintiff is asserting that the defendant wrongfully interpreted the law in denying benefits or a precertification request. Rather, Davidson asserts that the standard of review is *de novo whenever* the defendant interprets the law.

Summary Plan Descriptions are ERISA documents, *see Jensen v. SIPCO, Inc.,* 38 F.3d 945, 949 (8th Cir.1994), and must be written in a manner calculated to be understood by "the average plan participant." 29 U.S.C. § 1022(a). Davidson argues that if the Plan wrongly interpreted the law and set forth a description of the law as incorrectly interpreted in the SPD, which by its plain language requires it to pay benefits, then the Court should review that language and order Defendant to provide benefits.

The SPD provides under the "Breast Enlargement/Reduction" provision the following explanation:

> **Breast Enlargement/Reduction.** Any expenses or charges resulting from breast enlargement (augmentation) or reduction, whether male or female, unless directly related to treatment of existing cancer.

> The Women's Health and Cancer Rights Act of 1998 (Women's Health Act) requires that group health plans and HMO/POS plans offering mastectomy coverage provide coverage for reconstruction of the breast on which the mastectomy was performed; surgery and reconstruction of the other breast to produce a symmetrical appearance; and prosthesis and treatment of physical complications at all stages of the mastec-

tomy, including lymphedemas. The Women's Health Act is effective for mastectomies performed on or after January 1, 1999, or for complications arising from mastectomies performed before such date. The Women's Health Act does not apply to mastectomies performed before January 1, 1999, and thus, reconstructive surgery to produce a symmetrical appearance or prosthesis will not be covered unless the participant was actively being treated for the mastectomy after December 31, 1998.

The Plan argues that the Women's Health and Cancer Rights Act is inapplicable as set forth in the SPD. The Plan states that it merely noted its interpretation was consistent with the Women's Health Act. The Plan argues that the Women's Health Act requires coverage for reconstruction only when a plan provides benefits with respect to a mastectomy for a "participant or beneficiary who is receiving benefits in connection with a mastectomy." 29 U.S.C. § 1185b(a). As the Plan reiterates, Davidson's mastectomy was performed over a decade prior to her participation in the Plan. Moreover, she never received any benefits from the Plan for her mastectomy. Therefore, the Plan asserts that no coverage of reconstructive surgeries is required under the Women's Health Act in this case.

In addition, the Plan urges the Court to read the provision as a whole and not in isolation as construed by Davidson. *See Wilson v. Prudential Ins. Co. of America,* 97 F.3d 1010, 1013 (8th Cir.1996) (stating ERISA plan provisions must be construed consistently with each other). The Plan states that as set forth by the plain language of the SPD, breast reductions,

which includes mastectomies, are only covered under the Plan if related to the treatment of existing cancer. The Women's Health Act requires that plans offering benefits for mastectomies, which the Plan does if related to the treatment of existing cancer, must also offer coverage of reconstruction due to the mastectomy. This is described in the language set out in the SPD. Because Davidson never had a mastectomy that was or would have been covered by the Plan, as it was not related to the treatment of existing cancer, the Plan asserts that her proposed surgery is not covered under the provision of the SPD detailing the requirements of the Women's Health Act.

Davidson contends the benefits sought are for reconstructive surgery following a mastectomy for which she was actively being treated after December 31, 1998. As a result, she contends her requested benefits do fall into the Plan language cited above. In addition, Davidson disagrees with the Plan's statement that breast reductions obviously would include mastectomies.[17] Regardless, Davidson argues that under any standard of review, her proposed surgery is covered according to the plain language of the Plan. She states that she had a mastectomy before January 1, 1999, for which she was being actively treated after December 31, 1998, and she seeks reconstructive surgery for complications arising from that mastectomy.

▮ Plaintiff also urges the Court to apply less than an abuse of discretion standard due to procedural irregularities in the Plan's denial of her precertification request and the internal review that followed. When there is a procedural irregu-

---

**17.** Davidson cites to dictionary definitions to support her argument. A mastectomy is defined as the "excision or amputation of the breast." Webster's Ninth New Collegiate Dictionary 731 (1983). Reduction is defined as "the act or process of reducing ... the amount by which something is created." *Id.* at 988.

larity in an ERISA defendant's decision making process, a sliding scale standard of review is warranted. *See Woo,* 144 F.3d at 1160. Under the *Woo* standard, the plaintiff must show that (1) a procedural irregularity existed which (2) " 'caused a serious breach of the plan administrator's duty to her.' " *Lawyer v. Hartford Life & Accident Ins. Co.,* 100 F.Supp.2d 1001, 1009 (W.D.Mo.2000) (quoting *Woo,* 144 F.3d at 1160); *see also Ferrari v. Teachers Ins. & Annuity Ass'n,* 278 F.3d 801, 806 (8th Cir.2002) (citing *Woo,* 144 F.3d at 1160, and finding that "[t]o obtain a less deferential standard, [the plaintiff] must present material and probative evidence (1) that [the defendant] had a palpable conflict of interest or committed serious procedural errors, which (2) caused a serious breach of the plan administrator's duty to him."). In addition, the plaintiff must "show that the conflict or procedural irregularity has 'some connection to the substantive decision reached.' " *Woo,* 144 F.3d at 1161 (quoting *Buttram v. Cent. States, S.E. & S.W. Area Health & Welfare Fund,* 76 F.3d 896, 901 (8th Cir.1996)); *see also Phillips–Foster v. UNUM Life Ins. Co. of America,* 302 F.3d 785, 795 (8th Cir.2002).

The Eighth Circuit has held that

> where the plan trustee does not inquire into the relevant circumstances at issue; where the trustee never offers a written decision, so that the applicant and the court cannot properly review the basis for the decision; or where the procedural irregularities are so egregious that the court has a total lack of faith in the integrity of the decision making process, a court may infer that the trustee did not exercise judgment when rendering the decision.

*Buttram,* 76 F.3d at 900. In other words, when procedural irregularities cause the decision to be a breach of the plan administrator's fiduciary obligations, a lower standard of review is warranted. *Id.* at 901.

ERISA provides guidance as to what the fiduciary duties comprise for an ERISA plan administrator. ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of participants and beneficiaries . . . and for the exclusive purpose of . . . providing benefits to the participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(I). The standard to be exercised is that of a prudent person. 29 U.S.C. § 1104(a)(1)(B). In addition, ERISA provides that these duties are to be exercised "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).

▮ Davidson argues that there were serious procedural irregularities with the decision-making process employed by the Plan in this case. She argues that the Plan never provided her or her attending physician, Dr. Bergman, with the specific reason for its denial of her precertification request. In addition, Davidson asserts that the Plan frustrated her attempts and those of her counsel to ascertain the nature of the denial by the Plan's refusal to provide the documents upon which any decisions were based. Moreover, she contends the Plan made ambiguous and perhaps misleading statements to her counsel when he attempted to obtain copies of Davidson's claim file.[18] As a result, Davidson was unable to submit substantive additional information during her appeal. Davidson argues that the Plan is now "sandbagging" her with new legal theories

---

18. Apparently, the statements Davidson refers to are those related to whether her request was a claim. These statements are discussed in the section dealing with the timeliness of Plaintiff's Complaint.

for denial. *See Marolt v. Alliant Techsystems, Inc.,* 146 F.3d 617, 620 (8th Cir.1998) (finding defendant must rely on stated reasons for denying benefits and may not sandbag plaintiff with new theories not contained in its written denial).

Davidson asserts there is a breach of fiduciary duty as the Plan denied her access to the information upon which it was relying in reaching its decision. She also asserts that the original denial letter gave no specific reason for the denial of her claim, and the final denial letter following appeal did not consider the fact that counsel for Davidson asked the Plan to look at the language of the Plan regarding mastectomies and coverage for reconstruction as required by the Women's Health Act. Thus, Davidson contends the Plan did not consider the case in light of the appropriate language from the Plan. Moreover, she argues the Plan failed to fulfill its duty to develop the record by leaving documents out of the administrative record. *See Larson,* 114 F.Supp.2d at 871 (reciting court's obligation to ensure defendant fulfilled duty to develop the record). Davidson further contends that the Plan "did not even make a reasonable attempt to see if these benefits should have been paid" even though it has a duty to pay benefits when they are payable.

Davidson also argues that Defendant had a predisposition to deny benefits to her and those like her. She bases this argument on the fact that the Plan states the Committee consistently interprets mastectomy complication requests for pre-certification as it interpreted Davidson's request. She argues that such an interpretation is contrary to the plain language of the Plan that clearly states Plaintiff is entitled to benefits. Thus, Davidson asserts the Plan consistently disregards the documents and instruments governing the Plan.

The Plan argues that Davidson has failed to meet either prong of the *Woo* test, and therefore a sliding scale standard is not warranted. First, it argues that she has pointed to no procedural irregularity, or any irregularity that would even approach the level of egregiousness required to satisfy the *Woo* test. To counter Davidson's argument that the Plan was predisposed to deny her benefits, the Plan points out that it has paid even larger benefits to participants for covered procedures and that Davidson failed to provide any evidence beyond her general statement as proof of the Plan's alleged improper predisposition.

The Plan contends there is no palpable conflict of interest or procedural irregularity causing a serious breach of the plan administrator's fiduciary duty to the claimant. Consequently, the Plan argues the Committee is entitled to the full abuse of discretion standard in this case. *See Farfalla v. Mutual of Omaha Ins. Co.,* 324 F.3d 971, 973 (8th Cir.2003); *Farley v. Arkansas Blue Cross & Blue Shield,* 147 F.3d 774, 776 (8th Cir.1998) (citing *Kotrosits v. GATX Corp. Non–Contributory Pension Plan for Salaried Employees,* 970 F.2d 1165, 1173 (3d Cir.1992), and noting the desire of the fiduciary to maintain actuarial soundness of the plan is not conflict of interest). As support for the contention that there is no conflict of interest, the Plan states the following: "The amount claimed by Davidson is insignificant compared to the assets of the Defendant;[19] the Administrative Committee

---

**19.** The Court notes that while the costs of the requested surgery may be minimal to the Plan, these costs would not be insignificant to Plaintiff. Where minimal impact on a company's financial interests is asserted, the Court should also consider the aggregate of all claims of a like nature. *See West v. Aetna Life Ins. Co.,* 171 F.Supp.2d 856, 873

members are not compensated based on the decisions they make; and the Plan has routinely paid out more significant sums for eligible employees under this Plan." [20]

The Plan asserts that the Committee interpreted and applied the Plan documents to Davidson's precertification request consistent in manner and procedure as that used to evaluate other claims. In addition, the Plan argues that it would undermine its long-term business concerns and reputation to deny valid claims for benefits. *See Emamian,* 2001 WL 1681166 at *7 (holding that even if administrator is provider of benefits, there is no conflict of interest when the amount of the claim would have minimum financial impact on the company and when long-term business concerns would encourage the company to make its benefits determinations fairly and consistently, and in such cases the abuse of discretion standard applies). The Plan's fiduciary obligations extend to all participants in the Plan. *See Barnhart v. UNUM Life Ins. Co. of America,* 179 F.3d 583, 589 (8th Cir.1999). "Fiduciary obligations extend primarily to the plan as it relates to *all* beneficiaries, not just to individual claimants." *Id.* (citing *Massachusetts Mut. Life Ins. Co. v. Russell,* 473 U.S. 134, 142, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)) (emphasis added).

In addition, contrary to Davidson's assertions, the Plan states it did provide her with all relevant Plan documents and ample opportunity to submit medical documentation in support of her request for coverage. The Plan further claims it provided the entire administrative record to Davidson once the file was complete after the final review. The Plan also asserts that it performed a full and thorough review of Davidson's claim, even seeking the opinion of an independent reviewer. Additionally, the Plan argues that it has not "sandbagged" Plaintiff with new legal theories but has consistently applied the Plan provisions set forth in the SPD regarding non-covered treatment and set forth the reasons for denial in both its initial April 15, 2002, denial letter and in its final decision dated December 16, 2002. *See Davidson v. Prudential Ins. Co. of America,* 953 F.2d 1093, 1096 (8th Cir.1992) (finding that although initial letters were cursory and insufficient, the final two denial letters contained detailed explanations of the decision to deny benefits). The Plan explained in its court filings that the Women's Health Act did not apply and for this reason the Women's Health Act did not need to be addressed in the denial letters.

Secondly, the Plan correctly states that even assuming Davidson could prove a procedural irregularity in the present case, she must also show that said irregularity caused a serious breach in the Plan's fiduciary duty to her. This prong "presents considerable hurdle for plaintiffs," and requires that plaintiffs prove the decision was a product of the plan administrator's "whim." *Phillips–Foster,* 302 F.3d at 795 (citations and quotations omitted); *Schatz v. Mutual of Omaha Ins. Co.,* 220 F.3d 944, 948 (8th Cir.2000); *Barnhart,* 179 F.3d at 588, 589 n. 9. The Plan argues that Davidson is unable to overcome this significant hurdle as the record amply demonstrates the Committee did not reach its decision on a "whim," but gave her precertification request full and fair re-

---

(N.D.Iowa 2001); cf. *Emamian v. Elec. Data Sys. Corp.,* 2001 WL 1681166, *7 (S.D.Iowa 2001) (citing *Chalmers v. Quaker Oats Co.,* 61 F.3d 1340, 1344 (7th Cir.1995), and *Lawyer,* 100 F.Supp.2d at 1009–10) (considering minimal impact as an important factor).

20. The Plan cites several examples of payments made under the Plan to eligible participants.

view. Accordingly, the Plan contends the abuse of discretion standard is the appropriate standard of review to be applied.

The Plan grants the Committee discretionary authority to interpret and apply the terms of the Plan in connection with determining eligibility and entitlement to Plan benefits. The Plan further provides that the Committee shall have sole discretion to administer the Plan, and complete discretion to interpret it and make benefits determinations. Indeed, the Eighth Circuit has held in the past that Wal–Mart's Plan grants discretion to the administrator, thereby requiring application of the abuse of discretion standard. *See, e.g., Solger v. Wal–Mart Stores, Inc. Assocs. Health & Welfare Plan*, 144 F.3d 567, 568 (8th Cir.1998); *Cash*, 107 F.3d at 641. Thus, as long as the Plan has not interpreted the law or there does not exist a conflict of interest or procedural irregularity that caused a serious breach of the Plan's fiduciary duty to Davidson, then the abuse of discretion standard will apply.

The Court finds that the Committee did not undertake an interpretation of the law so as to require *de novo* review of its decision. Every plan under ERISA necessarily contains language relating to ERISA and other health care acts such as the Women's Health Act. Reference to statutory law does not render a decision by a plan administrator an interpretation of law. Otherwise, every decision made by a plan administrator or fiduciary based on an ERISA plan would be subject to *de novo* review, contrary to the decision in *Firestone Tire & Rubber Co. v. Bruch.*

Furthermore, the Court finds that while there may have been some procedural irregularities, particularly with the difficulty Davidson's counsel encountered in trying to get a copy of the administrative record, Davidson is unable to show that such irregularities caused a serious breach of the Plan's fiduciary duty to her or that the decision was a product of the Committee's whim. In addition, there exists no conflict of interest here. Therefore, the Court will apply the abuse of discretion standard in reviewing the benefits denial made by the Plan.

### 3. Reasonableness of Committee's Actions

The Plan argues that, under the abuse of discretion standard, the decision made by the Committee to deny Davidson's pre-certification request was reasonable. The Plan further contends that the decision is supported by substantial evidence. Davidson argues that even under a deferential review, the Plan's decision to deny her precertification request is unreasonable.

In applying the abuse of discretion standard to the present case, the Court must determine (1) whether the Committee's application of Plan language in its decision to deny benefits to Davidson for the proposed surgery is reasonable, and (2) whether the Committee's interpretation of the Plan terms is reasonable. *See, e.g., Munsen v. Wellmark, Inc.*, 257 F.Supp.2d 1172, 1187 (N.D.Iowa 2003) (evaluating administrator's decision as to reasonableness of interpretation of plan as well as whether application was factually supported by substantial evidence); *Dahlin v. Metropolitan Life Ins. Co.*, 255 F.Supp.2d 987, 997–99 (N.D.Iowa 2003) (same). In addition, the Court notes that in making its determination, " 'a court normally gives plan administrators considerable leeway to interpret and apply plan rules.' " *Dahlin*, 255 F.Supp.2d at 997 (quoting *Allison v. Wellmark, Inc.*, 153 F.Supp.2d 1023, 1027 (N.D.Iowa 2001)). The Court's determination under this standard is normally made upon a review of the administrative record available to the Committee in making its decision. *Ferrari*, 278 F.3d at 807.

### a. Application of Plan and Determination to Deny Benefits

Under the abuse of discretion standard, the Court must uphold the decision of the administrator as long as it is reasonable. *Shipley*, 333 F.3d at 901; *Farley*, 147 F.3d at 777. This standard reflects the Eighth Circuit's "general hesitancy" to interfere with the administration of an ERISA benefit plan. *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir.1998); *Munsen*, 257 F.Supp.2d at 1186; *see also Smith v. Unum Life Ins. Co. of America*, 305 F.3d 789, 794 (8th Cir.2002) ("A court should be hesitant to interfere with the administration of an ERISA plan."). A claim determination is reasonable if the decision is one that a reasonable person could reach on the facts, regardless of other reasonable alternatives. *See Schatz*, 220 F.3d at 949; *Farley*, 147 F.3d at 777; *Cash*, 107 F.3d at 641.

 In conducting a review of the reasonableness of a benefits decision under the abuse of discretion standard, the Court normally is confined to review the information before the administrator at the time of the claim decision. *Ferrari*, 278 F.3d at 807; *Schatz*, 220 F.3d at 949; *Farley*, 147 F.3d at 777; *Cash*, 107 F.3d at 641. This limitation is imposed to " 'ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators.' " *Cash*, 107 F.3d at 641–42 (quoting *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir.1993)). Likewise, under a *de novo* review, while the Court "has more discretion to allow the parties to introduce evidence in addition to that submitted to the plan decision-maker," *McKeehan*, 344 F.3d at 793, it should not normally consider new evidence that could have been offered to the plan administrator. *Conley v. Pitney Bowes*, 176 F.3d 1044, 1049 (8th Cir.1999); *see also Donatelli*, 992 F.2d at 765 ("If it is

necessary for adequate *de novo* review of the fiduciary's decision, the district court may allow the parties to introduce evidence in addition to that presented to the fiduciary. . . . However, to ensure expeditious judicial review of ERISA benefit decisions and to keep district courts from becoming substitute plan administrators, the district court should not exercise this discretion absent good cause to do so.") (citations omitted).

A court may, however, admit additional evidence in a review of denial of benefits under ERISA if the plaintiff shows good cause for the court to do so. *Brown v. Seitz Foods, Inc., Disability Benefit Plan*, 140 F.3d 1198, 1200 (8th Cir.1998); *see also Ferrari*, 278 F.3d at 807. If the disputed materials are neither particularly helpful or persuasive, then there has not been a breach of fiduciary duty and the materials need not be entered into the administrative record. *Phillips–Foster*, 302 F.3d at 798.

Davidson urges the Court to open the administrative record in this case to submit additional evidence. She argues that the record submitted by the Plan is devoid of letters from the Plan to her counsel requesting waivers it already had, Dr. Bergman's original letter seeking precertification, and references to Plan language clearly governing her request for precertification. Davidson also urges the Court to consider the affidavit of Dr. Bergman submitted with her response to Defendant's statement of undisputed facts. She posits that good cause exists because the Plan deliberately overlooked the section of its SPD pertaining to breast reconstruction, even after Plaintiff's counsel requested it do so. Moreover, all of these documents other than Dr. Bergman's affidavit were in the Plan's possession when it made its decision and were included in its decision-making process.

The Plan argues that Davidson has failed to show good cause for opening the record to add a few irrelevant ministerial letters. The Plan contends these letters were transmittal letters that have no material value. In addition, the Plan asserts that Dr. Bergman's original letter contains the same substantive information as can be found in his medical entries which are a part of the administrative record.

The Plan also states that it would violate Eighth Circuit precedent to admit Dr. Bergman's new opinion affidavit, as it provides medical evidence that was never before the Committee. Davidson has not offered any reason why this information could not have been or was not provided to the Committee when it was considering her appeal. Furthermore, even if the new evidence offered by Davidson was considered, it fails to show that the Committee decision was anything but reasonable.[21]

The Court finds it unnecessary to open the record. The material left out adds nothing to Plaintiff's arguments. The Court finds the record sufficiently reflects the substantive portions of the transmittal letters and Dr. Bergman's original letter such that there is no reason to open the record. In addition, the Court finds Dr. Bergman's affidavit is inadmissible. This evidence was never before the Committee even though Davidson had opportunity to present it to the Committee during the internal appeals process. *See, e.g., Cash,* 107 F.3d at 642 (finding district court's consideration of affidavit outside of record "clearly exceeded the scope of deferential review."). Indeed, she did submit additional evidence during the process. To accept the affidavit now would subvert the ERISA-required internal review process.

In conducting a deferential review, the Court is not to re-weigh the evidence and substitute its own view of the evidence for that of the plan administrator. *Ferrari,* 278 F.3d at 807; *Cash,* 107 F.3d at 641–42; *Bolling v. Eli Lilly & Co.,* 990 F.2d 1028, 1029 (8th Cir.1993); *Cox v. Mid–America Dairymen, Inc.,* 965 F.2d 569, 573 (8th Cir.1992). In other words, the Court may not " 'reject a discretionary trustee decision with which the court simply disagrees.' " *Donaho v. FMC Corp.,* 74 F.3d 894, 898 (8th Cir.1996) (quoting *Cox,* 965 F.2d at 572), abrogated on other grounds, *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 123 S.Ct. 1965, 1972, 155 L.Ed.2d 1034 (2003) (abrogating *Donaho* by stating ERISA does not require that plan administrators accord special deference to the opinions of treating physicians); *see also Cash,* 107 F.3d at 641. "If the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation may be made." *Cash,* 107 F.3d at 641 (citing *Donaho,* 74 F.3d at 899); *see also Phillips–Foster,* 302 F.3d at 794 ("The administrator's decision need not be the only sensible one, so long as the decision provides a reasonable explanation, based on the evidence, in support of a particular outcome."); *Solger,* 144 F.3d at 568 (finding that under the abuse of discretion standard, a court "will sustain the administrator's interpretations if it is reasonable, even if it is not the only reasonable interpretation of the plan, and even if [the court] would have chosen a different interpretation had the initial decision been [the court's] to make"). In addition, the Eighth Circuit has held that for an interpretation to be an abuse of discretion, it would need to be " 'extremely unreasonable.' " *Dahlin,* 255 F.Supp.2d at 997 (quoting *Kennedy v. Georgia–Pacific Corp.,* 31 F.3d 606, 609 (8th Cir.1994)).

---

**21.** The affidavit does not state that the proposed surgery is directly related to existing cancer or that her mastectomy was related to cancer.

■ Moreover, in determining whether the plan administrator abused its discretion and made an arbitrary and capricious decision, the Court must "ask whether the decision to deny ... benefits was supported by substantial evidence, meaning more than a scintilla but less than a preponderance." *Schatz*, 220 F.3d at 949 (citing *Donaho*, 74 F.3d at 898–901); *see also Ferrari*, 278 F.3d at 807; *Phillips–Foster*, 302 F.3d at 794. "A plan administrator's fact-based disability decision is reasonable if it is supported by 'substantial evidence.'" *Norris v. Citibank, N.A. Disability Plan*, 308 F.3d 880, 883–84 (8th Cir.2002) (citing *Fletcher–Merrit v. NorAm Energy Corp.*, 250 F.3d 1174, 1179 (8th Cir.2001)). "In other words, was the [plan administrator's] factual determination based on 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *LeStrange v. Fortis Benefit Ins. Co.*, 2003 WL 21372162, *11 (N.D.Iowa) (quoting *Donaho*, 74 F.3d at 900–01). Thus, an administrator's decision is to be considered reasonable "'if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision.'" *Schatz*, 220 F.3d at 949 (quoting *Donaho*, 74 F.3d at 899).

■ In reviewing a benefits denial, the Court will look to the administrative record. Important to that record is the medical evidence contained therein. ERISA does not require a plan to defer to the opinion of the treating physician. *Black & Decker Disability Plan*, 123 S.Ct. at 1972. Furthermore, where there is a conflict in medical opinions, "the plan administrator does not abuse his discretion by adopting one opinion, if reasonable," over other opinions provided. *Smith*, 305

F.3d at 794. With this principle and the rules governing review of a benefits determination under ERISA in mind, the Court will determine whether there is substantial evidence to support the Committee's decision such that it could be considered reasonable.

■ The Plan argues that the administrative record demonstrates that the Plan's denial of benefits was in no way an abuse of discretion. Davidson's claim was denied based on the following plan provisions:

> Benefits shall not be payable for treatment or services for the following, even if it is standard medical treatment:
>
> \* \* \* \* \* \*
>
> **Breast Enlargement/Reduction.** Any expenses or charges resulting from breast enlargement (augmentation) or reduction, whether male or female, unless directly related to treatment of existing cancer.
>
> \* \* \* \* \* \*
>
> **Complications of Non–Covered Services.** Charges for complications arising from any non-covered illness, injury, device or medical treatment.[22]

The Plan contends there is no evidence that the proposed surgery is directly related to existing cancer or that it is required by a complication arising from a covered treatment. To the contrary, it states that the surgical and pathology records irrefutably demonstrate that Davidson's 1980 mastectomy was performed for fibrocystic disease.

In addition, the independent reviewing physician, Dr. Friesen, found that "according to the information that you have provided for me, [the subcutaneous mastectomy] was not related to cancer ...."

---

**22.** The April 15, 2002, denial letter references only the provision "Complications of Non- Covered Services." The December 16, 2002, denial referenced both of these provisions.

[A]ccording to the information that you have given me, the subcutaneous mastectomy was related to severe fibrocystic disease." Thus, the Plan argues that the ruptured implant and the resulting proposed surgery is not related to former or existing breast cancer or to a covered treatment. In fact, Davidson has never had breast cancer. Moreover, her recent treatment for throat cancer is unrelated to the implant rupture. The fact that her implants had ruptures on two previous occasions also weighs against the current rupture having any connection to cancer.

Davidson's argument that the denial was unreasonable is based on her contention that the Plan failed to consider all the relevant terms of the SPD. Her claim is for reconstruction of a breast pursuant to complications of a mastectomy. Her mastectomy was performed before January 1, 1999, and she argues she was being treated actively by her physician for said mastectomy after December 31, 1998.[23] As such, Davidson argues the Plan clearly provides for coverage in reconstruction cases like her own.

Davidson also points out that Dr. Friesen's review was limited to whether the original mastectomy was related to cancer, and did not discuss reconstruction. Moreover, she argues that even if the record is not re-opened, Defendant's action must fail as there is no exclusion for mastectomies in the Plan. By stating that "the record shows that the rupture appears to be a complication from a non-covered device/treatment—a mastectomy performed and augmentation for fibrocystic disease performed a decade before Davidson became a participant in Wal–Mart's Plan," Davidson argues that the Plan has arbitrarily and capriciously decided that this

mastectomy would not have been covered in direct contravention to the language of the Plan.

Based on a review of the evidence in the record, the Court finds the Committee's determination was reasonable and made after a reasonable investigation of Davidson's medical records, including a review by an independent medical examiner. *See Farfalla,* 324 F.3d at 974 (finding the plan exhibited ample reflection and judgment before denying claim where, among other facts, it sought independent physician review of plaintiff's records and nothing in records demonstrated plaintiff was entitled to benefits). There is no medical information that the proposed surgery is "directly related to treatment of existing cancer." Rather, the rupture appears to be a complication from a non-covered device or treatment, namely, a mastectomy and restoration for fibrocystic disease. Moreover, the non-covered treatment occurred over a decade before Davidson became a participant in the Plan.

Based on these facts and the administrative record before the Committee, the decision to deny benefits to Davidson for the proposed surgery is supported by more than a scintilla of evidence. The Court finds the Committee's decision is supported by " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Jackson v. Metropolitan Life Ins. Co.,* 303 F.3d 884, 887 (8th Cir.2002) (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938), accord. *Delta– Family–Care Disability & Survivorship Plan v. Marshall,* 258 F.3d 834, 841 (8th Cir.2001)); *see also Farfalla,* 324 F.3d at 975 (finding plan's denial reasonable where

---

**23.** The only indicated treatment for her mastectomy after December 31, 1998, concerns the ruptured implant. Davidson has not ar-

gued that she was otherwise receiving active treatment for her mastectomy.

there was no evidence that plaintiff's condition met plan definition, and where there was actually evidence to the contrary). Based on the foregoing, the Court finds the Committee's decision was reasonable. Thus, the Plan did not commit an abuse of discretion in denying the precertification request made by Davidson.

### b. Interpretation of the Plan Terms

■ The Court applies a five-factor test in determining whether an administrator's plan interpretation is reasonable. *Finley v. Special Agents Mut. Benefit Ass'n Inc.*, 957 F.2d 617, 621 (8th Cir. 1992); *see also Cash*, 107 F.3d at 641. The five factors are as follows:

(1) whether the interpretation is consistent with the goals of the plan, (2) whether the interpretation renders any plan language meaningless or inconsistent, (3) whether the interpretation conflicts with the requirements of the ERISA statute, (4) whether the administrators have interpreted the words at issue consistently, and (5) whether the interpretation is contrary to the clear language of the plan.

*Buttram*, 76 F.3d at 901 (citing *Finley*, 957 F.2d at 621).

### i. Whether the interpretation is consistent with the goals of the plan

The first factor to consider is "whether the interpretation is consistent with the goals of the plan." *Buttram*, 76 F.3d at 901. According to Plan documents, the purpose of the Plan is to "provide Participants and Beneficiaries certain welfare benefits ...." The Plan documents further define situations when benefits will not be provided. Employers such as Wal–Mart have no obligation to provide any particular benefits. As a result, sponsors of benefit plans can define the level of benefits they will

offer along with exclusions to those benefits. *See Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 511, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981); *Waller v. Hormel Foods Corp.*, 120 F.3d 138, 140 (8th Cir. 1997).

Davidson argues the precertification denial is unconscionable given the plain language of the Plan. She argues that the Plan language specifically includes Davidson's requested treatment. As the Court previously found, the Committee's decision to deny Davidson's precertification request is reasonable and based on substantial evidence. Davidson's argument here adds little to the determination of whether the Plan's interpretation is consistent with the goals of the Plan.

The goal of the Plan is to provide benefits for eligible medical procedures as defined in the Plan. The Committee's determination that the Plan required exclusion of Davidson's benefit claim is consistent with this goal. Moreover, because the Plan's purpose is to benefit all covered employees, paying an uncovered claim does not further that purpose. *See Farfalla*, 324 F.3d at 975.

### ii. Whether the interpretation renders any plan language meaningless or inconsistent

The second factor to consider is "whether the interpretation renders any plan language meaningless or inconsistent." *Buttram*, 76 F.3d at 901. Davidson contends that her requested surgery is covered by the Plan language. While mastectomies are covered by the Plan, the initial denial was based on the exclusion for complications from non-covered services. Moreover, she argues the Plan failed to consider her surgery as reconstructive, instead lumping it in with the exclusions for enlargement/reduction.

The Committee's interpretation of the exclusion for benefits for breast surgery not related to existing cancer or for complications from non-covered conditions does not render any language of the Plan meaningless or inconsistent. *See Thompson v. Blue Cross Blue Shield of La.*, 2002 WL 31415717 (E.D.La.) (finding reading of policy as a whole was consistent where breast surgery was excluded except when performed for a covered mastectomy under the plan). As the Court has already found, the Committee's decision was reasonable. This decision does not affect other Plan language so as to make it meaningless or inconsistent.

### iii. Whether the interpretation conflicts with the requirements of the ERISA statute

The third factor to consider is "whether the interpretation conflicts with the requirements of the ERISA statute." *Buttram*, 76 F.3d at 901. As previously stated, ERISA does not require that an employer offer health benefits. *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). Furthermore, ERISA does not create a substantive entitlement to such benefits. *Id.* The level of benefits to be provided is within the control of the private parties creating the plan, *Alessi*, 451 U.S. at 511 (finding it is "private parties, not the Government, [that] control the level of benefits"); *Waller*, 120 F.3d at 140 (finding ERISA leaves the level of plan benefits conferred to the private parties creating the plan), and "[e]mployers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss–Wright Corp.*, 514 U.S. at 78, 115 S.Ct. 1223.

In addition, ERISA does not prohibit exclusions in plan benefits where the exclusion has a legitimate business pur-

pose. *See Kirkou v. Blue Cross Blue Shield of Memphis*, 19 F.3d 23, 1994 WL 62807, *1 (8th Cir.1994). For example, the actuarial soundness of a fund is too important to permit administrators to obligate funds to persons not entitled to them under the terms of the plan. *See Phillips v. Kennedy*, 542 F.2d 52, 55 n. 8 (8th Cir. 1976). ERISA does, however, require that administrators provide benefits to participants in accordance with the plain language of the plan. 29 U.S.C. § 1104(a)(1)(D).

The Plan contends that it was "free to impose any condition it wished on the payment of benefits and its interpretation that no coverage was provided cannot conflict with ERISA requirements as a matter of law." Accordingly, the Plan argues that its interpretation is consistent with the substantive and procedural requirements of ERISA. *See Dahlin*, 255 F.Supp.2d at 999. Other courts have upheld similar types of exclusions as consistent with ERISA. *See, e.g., Richards v. Engelberger*, 868 F.Supp. 117, 119 (D.Md.1994) (upholding plan's exclusion of coverage for breast enlargements or reductions); *Martin v. Masco Indus. Employees' Benefit Plan*, 747 F.Supp. 1150, 1153–54 (W.D.Pa. 1991) (same); *McGinnis v. Executive Dir. of Cent. States, SE & SW Areas Health & Welfare Fund*, 1991 WL 716749 at *2, 5 (W.D.Mo.1991) (finding the plan did not abuse discretion in denying claim for mammoplasty surgeries where plan did not cover augmentation unless reconstruction for malignancy); *Bontz v. S\* A\* Litho Fund*, 1989 WL 120753, *1, 4–5 (D.N.J. Oct. 2, 1989) (upholding plan's exclusion of coverage for most breast enlargements or reductions); *Delosky*, 4:CV–00–1066, *supra* (unpublished) (finding breast surgery not covered by terms even if doctors felt it was medically necessary).

The Plan further asserts the Committee's interpretation is also consistent with the Women's Health and Cancer Rights Act of 1998, 29 U.S.C. § 1185b. According to the Plan, the Women's Health Act requires coverage for reconstruction only when a plan provides benefits with respect to a mastectomy for a participant who is receiving benefits in connection with a mastectomy. As the Plan reiterates, Davidson's mastectomy was performed more than a decade before she became eligible for participation in the Plan. Moreover, Davidson did not receive any benefits from the Plan in connection with her mastectomy. Consequently, no coverage of reconstructive surgeries is required under the Women's Health Act in this case.

Davidson contends that because the Plan denied her precertification request in direct contravention to the plain language of the Plan, the Plan's interpretation conflicts with the ERISA requirement to provide the benefits listed in the Plan. When the denial is contrary to the language of the Plan, the interpretation conflicts with ERISA.

The Court finds the interpretation of the Plan language by the Committee does not conflict with ERISA requirements. The Plan's interpretation of the Plan terms does not circumvent or invalidate any ERISA requirements.

#### iv. Whether the administrators have interpreted the words at issue consistently

The fourth factor the Court considers is "whether the administrators have interpreted the words at issue consistently." *Buttram*, 76 F.3d at 901. There is no evidence that the Committee has interpreted the words at issue here in an inconsistent manner. To the contrary, the Plan introduced an affidavit from a Committee Member that states the Committee has consistently applied the exclusions. She further provides that "the Committee has consistently interpreted the Plan documents' 'Breast Enlargement/Reduction' and 'Complications of Non–Covered Services' to exclude benefits for employees when the expenses are not directly related to the treatment of existing cancer." However, there are no references to specific benefits determinations, just the general statement by a Committee member that the Plan language is interpreted the same for like requests.

Plaintiff argues the Plan has failed to set out examples to show a consistent interpretation of the Women's Health Act language in the Plan. Nevertheless, she has come forward with no evidence indicating inconsistency in Committee interpretations. As a result, the Court finds there is no evidence that the Committee interpreted the words and provisions at issue inconsistently.

#### v. Whether the interpretation is contrary to the clear language of the plan

The final factor to consider is "whether the interpretation is contrary to the clear language of the plan." *Buttram*, 76 F.3d at 901. The most important factor in determining the reasonableness of an administrator's decision is the plan language. *See Lickteig v. Business Men's Assurance Co. of America*, 61 F.3d 579, 585 (8th Cir.1995).

In this case, the Plan language vests the Committee with discretion to determine what constitutes covered medical procedures. The exclusions in the Plan at issue here are explicit and mandate exclusion for certain benefits. On the other hand, Davidson argues that coverage for mastectomies and subsequent complications is clear and by failing to act in accordance with Plan language, the Committee has breached its fiduciary duties.

As the Court previously determined, the Committee's decision was reasonable and supported by substantial evidence. According to the plain language of the Plan, the section listing "Charges Not Covered" was prevailing as the proposed surgery falls into two of the listed categories. The plain language referencing the Women's Health Act is inapplicable here as Davidson is not covered under that language.

### c. Summary of Deferential Review

Based on the foregoing discussion, the Court finds the Committee's decision in denying Davidson's precertification request was reasonable and based on substantial evidence. The Court notes that the decision reached by the Committee is not necessarily the same result that the Court would have reached, but it does not need to be. The Court further finds, upon applying the five *Finley* factors, the Committee's interpretation of the Plan terms was reasonable. As a result, in applying the abuse of discretion standard, the Court finds the Plan is entitled to summary judgment in this case.

While the Court has determined summary judgment in favor of Defendant is appropriate, the contentions made in Plaintiff's Cross–Motion for Summary Judgment will be briefly discussed by the Court. Ultimately, Plaintiff's motion is moot and will accordingly be denied.

### D. Plaintiff's Cross–Motion for Summary Judgment

Plaintiff's Cross–Motion for Summary Judgment is based primarily on her response to the Plan's Motion for Summary Judgment and her contentions that said motion is unfounded. She introduces little new argument, but instead merely argues the standard of review differs from that asserted by Defendant, and, apparently, she is entitled to summary judgment un-

der the alternative standard. The majority of her argument is detailed and analyzed above.

### 1. *De Novo* Review of the Administrative Committee Decision

The Court has already determined that the proper standard to be applied in the instant case is the abuse of discretion standard. As a result, Davidson's argument here fails for the reasons discussed above.

### 2. In the Alternative, Denial Is Unreasonable Under Deferential Review

The Court has also already concluded that both the Committee's application of Plan terms and its interpretation of those Plan terms was reasonable and supported by the record in evidence. Consequently, Plaintiff's argument fails for the reasons discussed above.

### CONCLUSION

Based on the foregoing, the Court hereby **grants** Defendant's Motion for Summary Judgment (Clerk's No. 6). The Court finds that the claim is time barred under the contractual limitations period of the Plan, and that even if not untimely on the grounds that the limitation period is unreasonably short, upon a deferential review under the abuse of discretion standard, the Committee's decision was reasonable. In addition, the Court hereby denies Plaintiff's Cross–Motion for Summary Judgment (Clerk's No. 12) as it has been rendered moot by the Court's decision on Defendant's Motion.

**IT IS SO ORDERED.**